**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRCT OF OHIO
EASTERN DIVISION**

KINZIE ADVANCED POLYMERS, LLC, :
d/b/a Grove Bags, :
 :
  Plaintiff, :
 : Case No. 1:24-cv-01887-SO
v. :
 : Judge Solomon Oliver, Jr.
CALYX CONTAINERS, LLC, et al., :
 :
  Defendants. :

**<u>MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
TO COMPEL FILED AGAINST CALYX CONTAINERS, LLC WITH
RESPECT TO THE SERVICES PERFORMED BY MICHAEL
RYAN TATUM FOR CALYX CONTAINERS, LLC</u>**

**I. <u>INTRODUCTION</u>**

This Court's preliminary injunction order leaves no doubt that the duties performed by

Defendant Michael Ryan Tatum ("Tatum") on behalf of Defendant Calyx Containers, LLC

("Calyx") (Tatum and Calyx are collectively, "Defendants") are highly relevant to the claims

asserted by Plaintiff Kinzie Advanced Polymers, LLC d/b/a Grove Bags ("Plaintiff" or "Grove

Bags").  To determine Tatum's job duties with Calyx, Grove Bags served Interrogatory Number 8

and Document Requests 9, 10, 11, 12, 13, 14, 15, 16, 17, 28, 29, 37, 38, 47, 48, and 50.

To date, Calyx has produced only 421 documents that are not documents created by Grove

Bags. The depositions of Tatum and Calyx's CEO, President, and Director of Product

Development revealed two critical realities: (1) Defendants misrepresented facts to this Court in

the injunction hearing; and (2) Calyx has failed to produce broad swaths of highly relevant

documents, despite knowledge of Plaintiff's requests and confirmation that these documents exist.

Accordingly, because the information and documents are highly relevant to this lawsuit, Plaintiff

respectfully requests this Court to grant this Motion pursuant to Rules 37(a)(3)(B)(iii) and (iv), compelling production of documents and information.  Because Calyx deliberately withheld relevant information and forced Plaintiff to file this Motion to Compel, and to deter future gamesmanship with discovery, this Court should further order Calyx to pay Plaintiff's reasonable expenses incurred in making the motion, including attorney's fees pursuant to Rule 37(a)(5)(A) and sanction Calyx's counsel pursuant to Rule 26(g)(3).

## II.   <u>MEET AND CONFER CERTIFICATION</u>

Grove Bags' counsel emailed, wrote letters and spoke to counsel via telephone prior to filing this Motion.  (Declaration of David A. Campbell at ¶¶3-25) (hereinafter, "Dec. Counsel at ___") (attached as Exhibit 1).  In addition, because the additional documents arose in depositions, the issue was raised repeatedly with counsel during the depositions.  (Dec. Counsel at 21).  Counsel never agreed to supplement on the record.  (Dec. Counsel at 21).  Rather, Calyx's counsel let Calyx's CEO repeat the same statement multiple occasions during his deposition:

> "I think we are working through that between our parties' counsel."
> (Deposition of Simon Knobel at 226 (hereinafter "Dep. Knobel at ___);
> "Working with my attorneys through the process and the proper channels."  (Dep. Knobel at 238);
> "Right now I'm working – we're working through the discovery process with you and through counsel."  (Dep. Knobel at 239).

During the meet and confer conference, Calyx's counsel took the same position -- Calyx's counsel made clear that counsel had no authority to agree to any supplemental production.  (Dec. Counsel at 16).  After two lengthy letters and repeated admissions that Calyx has substantial documents available that address Tatum's job duties, only one PowerPoint was produced.  (Dec. Counsel at 17).  Accordingly, Grove Bags has satisfied its Rule 37(a)(1) meet and confer requirement.  (Dec. Counsel at 3-25 and Exhibits 1-3).

III.     **RELEVANT FACTS**

     A.     **The Court's Injunction Order Makes Tatum's Job Duties And Communications When Working For Calyx Highly Relevant.**

Tatum worked for Grove Bags pursuant to an employment agreement. (ECF No. 56, pg. 6). Tatum's employment with Grove Bags ended with a severance agreement that confirmed Tatum's compliance with the employment agreement obligations in return for severance payments. (ECF No. 56, pg. 6). Tatum signed a consulting agreement with Calyx in late August 2024. (ECF No. 56, pg. 8). As of the injunction hearing, Tatum continued to work as a consultant for Calyx under the terms of the original consulting agreement. (ECF No. 56, pg. 8).

The Court's injunction order holds that Ohio law applies to the employment and severance agreements. (ECF No. 56, pg. 20). In addition, the Court held that the "non-compete agreement in Tatum's contracts with Grove Bags is reasonable and enforceable." (ECF No. 56, pg. 38). Based on these holdings and the facts, the Court found Grove Bags established a strong likelihood of success on the merits on its breach of contract claims and tortious interference with contract claim. (ECF No. 56, pgs. 45 and 53).

     B.     **Grove Bags' Discovery Requests Seek Documents And Information On Tatum's Job Duties With Calyx.**

Grove Bags served Interrogatory Number 8 and Document Requests 9, 10, 11, 12, 13, 14, 15, 16, 17, 28, 29, 37, 38, 47, 48, and 50 that address Tatum's job duties with Calyx. (Dec. Counsel at 2 and 28). Calyx initially produced 1,072 documents. (Dec. Counsel at 29-32). However, 732 pages of the production were merely Grove Bags' communications to clients. (Dec. Counsel at 29-32). Of the documents produced by Calyx that address Tatum, Calyx produced invoices, text messages, and emails regarding trade shows. (Dec. Counsel at 29-32). Calyx did not produce any calendars for Tatum, emails sent or received by Tatum on consulting work, training materials presented by Tatum, marketing materials created by Tatum, or any other documents demonstrating

the actual duties and responsibilities of Tatum while working for Calyx for nearly one year. (Dec. Counsel at 29-32). None of the discovery responses at issue in this motion, however, included a privilege log of materials withheld nor did Calyx indicate that responsive documents had been located, but were being withheld by Calyx. (Dec. Counsel at 29-32).

Grove Bags assumed Calyx and Tatum had testified truthfully at the injunction hearing regarding Tatum's allegedly limited work on Calyx Cure – Calyx's competing product with Grove Bags. (Dec. Counsel at 33). The relevant hearing testimony is as follows:

- As to the development of Calyx Cure, Tatum and Calyx testified unambiguously that Tatum played no role in the development of Calyx Cure. (TR at 272 (Tatum)); (TR at 335, 350, 351and 352 (Knobel));
- As to training, Tatum denied he performed actual training. (TR at 224). Rather, Tatum claimed he was "helpinig" put together "educational collaterol" to be presented by the sales director. (TR at 224); and
- Tatum similarly testified that due to the departure of a marketing department employee, Tatum was providing assistance to Calyx to "tighten up their branding around their continued growth." (TR at 260).

On direct examination from Calyx's counsel, Calyx's CEO stressed that Calyx offers many products beyond Calyx Cure. (TR at 352). The CEO claimed Tatum was focused "on a holistic strategy on how Calyx better cements [itself] in the packaging space." (TR at 352). The CEO concluded his direct examination with the following testimony (TR at 353):

> Q. And then even within the cannabis space, he works on products
> other than Calyx Cure?
> A. Correct.
> Q. Which is the product that is a competitor of Grove Bags' Terploc
> product?
> A. Yes.

## C. The Four Depositions Have Shown That Defendants Have Purposefully Misrepresented Tatum's Calyx Services.

The depositions in this matter have revealed facts far different from Calyx's position in the injunction hearing and in Calyx's discovery responses. (Dec. Counsel at 35). Following the first

4

two depositions, Grove Bags' counsel sent multiple letters to Calyx's counsel on each topic.  (Dec. Counsel at 3-25).

Most important, Calyx provided Tatum a computer to perform his Calyx duties. (Deposition of Tatum at 146 (hereinafter "Dep. Tatum at __")).  Calyx's President testified that Tatum was given a Calyx computer due to Tatum's high frequency of interaction with the Calyx team.  (Deposition of Alex Gonzalez at 53 (hereinafter "Dep. Gonzalez at __")).  Tatum was also provided with a Calyx email: rtatum@calyxcontainers.com.  (Dep. Tatum at Ex. 28).  Tatum testified that he kept his Calyx calendar and meeting schedule on the electronic calendar provided by Calyx.  (Dep. Tatum at 144-145).  Tatum further testified Grove Bags would need to review his emails to determine his Calyx job duties.  (Dep. Tatum at 146 ("Q.  Number two that we would see what you did for them would be your actual emails sent and received, right, on your Calyx email? A. Emails sent and received?  Yes").  Calyx's CEO admitted to also needing to review the emails to determine what Tatum was doing during his Calyx contract.  (Dep. Knobel at 239 (Q. Did he start them? A. I would need to look through documents to provide services and emails)). Finally, Tatum admitted that he created PowerPoints and other documents that were saved to the Calyx computer system.  (Dep. Tatum at 146 ("Q. Where else did you keep -- like did you -- if you created a PowerPoint, would that be on the Calyx system, or did you do it on your girlfriend's computer? A. I mean, I used my Calyx system for Calyx work").

Tatum reported to Calyx's President and CEO.  (Dep. Gonzalez at 48).  Tatum met with Calyx's President on a weekly basis to provide the President with updates on his work and to get assignments.  (Dep. Gonzalez at 48-50); (Dep. Knobel at 133).  The Calyx President confirmed Tatum's "[d]irection was coming from [the President], and [Tatum] was executing."  (Dep. Gonzalez at 50).  Calyx's President reviewed the services paragraph in the Calyx consulting

contract and he admitted that Tatum performed all of the duties set forth in the agreement.  (Dep. Gonzalez at 55).  The only caveat the President placed on Tatum's duties is that some of the high level duties were performed at the direction of the President.  (Dep. Gonzalez at 58 (Q.  Okay. And on 3(a), were you and Simon giving him the strategy and then asking him to implement, or how did it work?  A. Yea")).

As to what the emails, calendar and Calyx documents will show, all four witnesses admitted to facts far different than the facts presented by Calyx at the injunction hearing:

- Tatum was responsible for marketing Calyx Cure.  (Dep. Tatum at 111); (Dep. Knobel at 238); (Dep. Gonzalez at 50);
- Tatum would put in hours to Calyx every workday.  (Dep. Gonzalez at 70);
- Tatum was in charge of Calyx's trade shows.  (Dep. Tatum at 115);
- Tatum attended three trade shows on behalf of Calyx and he worked the booth in each show.  (Dep. Gonzalez at 72 and 74);
- Calyx's CRM system would show what customers were inputted by Tatum.  (Dep. Tatum at 147).  In fact, Calyx's CEO reviewed the CRM system and testified that Tatum inserted names, but the names have not been produced.  (Dep. Knobel at 194);
- Tatum submitted receipts to support his travel.  (Dep. Tatum at 148); (Dep. Gonzalez at 62);
- Tatum's marketing recommendations to Calyx management would be on his Calyx computer.  (Dep. Tatum at 154);
- Tatum's social media content and recommendations would be on the computer. (Dep. Tatum at 156);
- Tatum led the hiring efforts of at least two Calyx employees.  (Dep. Tatum at 150);
- Tatum trained Calyx's sales staff.  (Dep. Gonzalez at 59);
- Tatum made himself available to the Calyx sales team when they had questions. (Dep. Gonzalez at 72);
- The sales team held weekly sales meetings and Tatum was invited to attend.  (Dep. Gonzalez at 32-33).  The President would send him calendar invites when Tatum was supposed to attend the weekly sales meeting.  (Dep. Gonzalez at 33);
- Calyx Cure was a new product line for Calyx and Tatum provided company-wide training meetings to Calyx employees on curing and how packaging assists in curing cannabis.  (Deposition of Peter Andersson at 166 (hereinafter "Dep. Andersson at __")).  Calyx employees received Google calendar invites to attend the Tatum sessions.  (Dep. Andersson at 168); and
- Tatum drafted the social media and email marketing communications for Calyx. (Dep. Andersson at 163-165).  Tatum worked with the product development team to verify the communications on Calyx Cure were consistent with Calyx's testing. (Dep. Andersson at 163).

The best evidence to support Grove Bags' request for supplemental documents is Tatum's testimony on product development. (Dep. Tatum at 183). Despite the overwhelming evidence contrary to his testimony, Tatum still claims he played no role in product development. (Dep. Tatum at 183 ("Q. And then as to product development, we asked them for emails and communications you had with Mr. Andersson. Are we going to see any of those, or did you actually communicate with Mr. Andersson? A. No, nor was I involved in the product development)). Calyx's CEO admitted that Tatum was not truthful. (Dep. Knobel at 105 ("Q. Now, we have asked for Andersson's communications with Mr. Tatum. Do you know if those two communicated during Tatum's association with Calyx? A. I believe they interacted").

Peter Andersson is Calyx's Director of Product Development. (Dep. Andersson at 6). Andersson testified that Calyx has a product development team that focused on the development of Calyx Cure. (Dep. Andersson at 101). The product development team included Calyx's CEO, Calyx's Director of Product Development, Tatum, and one other former Calyx employee. (Dep. Andersson at 101). In fact, Andersson recalls that Tatum attended these meetings while the former employee was still at Calyx which means that Tatum may have been part of the meetings before the consulting contract. (Dep. Andersson at 101-102); (Dep. Andersson at 149 ("Q. Yeah. What was your understanding of his role? A. My understanding is he was consulting at first and then he joined as an employee of the business")). Andersson admitted that Tatum played a significant role in the sizes of new bags that Calyx Cure wanted to develop. (Dep. Andersson at 113). Andersson further admitted that his emails and calendar invites would show the dates that Tatum was on the product development team. (Dep. Andersson at 103-104).

Andersson made clear that Tatum was "involved in testing" of Calyx Cure. (Dep. Andersson at 101). Over the objection of Calyx's counsel, Andersson admitted that Tatum was

"valuable" to the Calyx Cure testing process.  (Dep. Andersson at 112).  Tatum's involvement in the Calyx Cure testing process continued through 2025 – before and after the injunction hearing.  (Dep. Andersson at 120-121).  Andersson admitted that his emails and calendar invites would show the extent and dates of Tatum's involvement.  (Dep. Andersson at 145).

After two letters and repeated requests to produce, Calyx finally produced a PowerPoint of training that was apparently created by Tatum and presented by Tatum to the entire Calyx team.  (Dec. Counsel at 17).  Calyx marked the training as confidential, and the document was not produced until all four witness depositions were completed despite the fact the training was referenced by Calyx's CEO in his deposition.  (Dec. Counsel at 17).  The PowerPoint is marked as Calyx Cure Training: Week One.  (Dec. Counsel at 17).  Calyx's CEO admitted that additional training documents may be on Calyx's computer system, but there has been no promise to review and produce.  (Dec. Counsel at 18).  The one training document produced is being filed under seal to permit the Court to verify Tatum's duties on Calyx Cure.  (Dec. Counsel at 17).

IV.    **ARGUMENT**

    A.    **Standard Of Review.**

Rule 26(b) of the Federal Rules of Civil Procedure provides "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Rule 37 permits a discovering party to file a motion for an order compelling discovery if another party fails to respond to discovery requests, provided the motion to compel includes a certification the movant has in good faith conferred or attempted to confer with the party failing to respond to the requests.  Fed. R. Civ. P. 37(a).  Rule 37 further allows for a motion to compel discovery when a party fails to answer interrogatories submitted

under Rule 33 or to provide proper responses to requests for production of documents under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iii) and (iv).

"'The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant.'" *Mcelwee v. Bryan Cowdery, Inc.*, Case No. 2:21-cv-1265, 2022 WL 985664 *2 (S.D. Ohio April 4, 2022) (*citing Gruebaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010)). "Relevant evidence" is evidence that "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. "While relevancy is broad, 'district courts have discretion to limit the scope of discovery [when] the information sought is overly broad or would prove unduly burdensome to produce.'" *Plain Local Sch. Dist. Bd. of Educ. v. DeWine*, 335 F.R.D. 115, 119 (N.D. Ohio 2020) (*citing Surles ex rel. Johnson v. Greyhound, Lines, Inc.*, 474 F.3d 288, 205 (6th Cir. 2007)).

## B. Calyx Should Be Ordered To Produce The Documents Relating To Tatum's Job Duties.

Tatum's job duties for Calyx are unquestionably relevant to this lawsuit. This Court has already held that Grove Bags has a strong likelihood of success on the merits on its breach of contract claims and tortious interference with contract claim. (ECF No. 56, pgs. 45 and 53). The evidence of Tatum's job duties address Tatum's breach of contract, Tatum's use of Grove Bags' confidential information, Tatum's use of Grove Bags' trade secrets, and Grove Bags' damages. (Dec. Counsel at 40). The following interrogatories and document requests address Tatum's job duties for Calyx:

### INTERROGATORY NO. 8:
Identify all communications you have had with Tatum or Cultivated[1] from January 1, 2023, to the present.

---

[1] Cultivated is Tatum's consulting company that entered into the Calyx contract. (Dep. Tatum at Ex. 19).

**RESPONSE:** Calyx objects that Interrogatory No. 8 is overly broad, unduly burdensome, and seeks information irrelevant to any party's claims or defenses and is disproportional to the needs of the case.  Calyx further objects that to the extent the Interrogatory calls for oral communications of which there is no documented record, the request is unduly burdensome, unreasonable, and seeks voluminous information.  Subject to and without waiving any objections, and pursuant to Fed. R. Civ. P. 33(d), Calyx states that responsive information, located after a reasonably diligent search, is available in the documents produced herewith.  (*See* CALYX000001–CALYX000075, CALYX000157, CALYX000163–CALYX000171, CALYX000643–CALYX000645, CALYX000818–CALYX000825, CALYX001069, CALYX001070-CALYX001072).

**REQUEST FOR PRODUCTION NO. 9:** All documents that refer, reflect, or relate to Tatum's employment with Grove Bags, including, but not limited to, Tatum's job duties and responsibilities, benefits and compensation, training or orientation, any of Tatum's activities during the course of Tatum's employment with Grove Bags, and/or any agreements that Tatum signed with Grove Bags.
**RESPONSE:**  Calyx objects that Request for Production No. 9 is overly broad, unduly burdensome, and seeks documents irrelevant to any party's claims or defenses and is disproportional to the needs of the case, particularly in its request for "all" documents that "relate to" Tatum's employment with Grove Bags.  Calyx further objects that the request is unduly burdensome in that it seeks documents already in Plaintiff's possession, custody, or control. Subject to and without waiving any objections, Calyx responds that the only documents in its possession, custody, or control related to Tatum's employment with Grove Bags are Tatum's alleged contracts with Grove Bags attached to the Complaint.

**REQUEST FOR PRODUCTION NO. 10:** All documents that refer, reflect, or relate to Tatum's employment or contract with Calyx, including, but not limited to, Tatum's job duties and responsibilities, benefits and compensation, training or orientation, any of Tatum's activities during the course of Tatum's employment with Calyx, and/or any agreements that Tatum signed with Calyx.
**RESPONSE:**  Calyx objects that Request for Production No. 10 as overly broad, unduly burdensome, and seeks documents irrelevant to any party's claims or defenses and is disproportional to the needs of the case, particularly in its request for "all" documents that "relate to" Tatum's contract with Calyx or his "activities."  Calyx further objects that the request seeks proprietary business information, which under Grove Bags' own definition constitute trade secrets of Calyx.  Subject to and without waiving any objections, Calyx has produced records of Calyx's compensation to Cultivated and the Consulting Agreement between Calyx and Cultivated.  (*See* CALYX000001–CALYX000112).

**REQUEST FOR PRODUCTION NO. 11:** All documents that refer, reflect, or relate to Cultivated's contract with Calyx, including, but not limited to, Tatum's job duties and responsibilities, benefits and compensation, training or orientation, any of Tatum's activities during the course of Tatum's employment with Calyx, and/or any agreements that Tatum signed with Calyx.

**RESPONSE:** Calyx objects to Request for Production No. 11 as duplicative of Request No. 10. Calyx incorporates its response to Request No. 10.

**REQUEST FOR PRODUCTION NO. 12:** All documents that refer, reflect, or relate to Tatum's solicitation of employees on behalf of Calyx.

**RESPONSE:** Calyx objects to Request for Production No. 12 to the extent it seeks information that is irrelevant to the claim or defense of any party. Calyx further objects that the request is overly broad and seeks proprietary business information. Subject to and without waiving any objections, Calyx responds that no documents in its possession, custody, or control relate to Tatum's solicitation of employees on behalf of Calyx.

**REQUEST FOR PRODUCTION NO. 13:** All documents that refer, reflect, or relate to Cultivated's solicitation of employees on behalf of Calyx.

**RESPONSE:** Calyx objects to Request for Production No. 13 as duplicative of Request No. 12. Calyx incorporates its response to Request No. 12.

**REQUEST FOR PRODUCTION NO. 14:** All documents that refer, reflect, or relate to Tatum's solicitation of customers on behalf of Calyx.

**RESPONSE:** Calyx objects to Request for Production No. 14 as overly broad, unduly burdensome, and seeking documents irrelevant to any party's claims or defenses and disproportional to the needs of the case, particularly in its request for "all" documents that "relate to" Tatum's alleged solicitation of customers. Calyx further objects that the request seeks proprietary business information, which under Grove Bags' own definition constitutes trade secrets. Subject to and without waiving any objections, Calyx states that it is willing to meet and confer on this request and may be willing to produce some documents after the entry of a protective order.

**REQUEST FOR PRODUCTION NO. 15:** All documents that refer, reflect, or relate to Cultivated's solicitation of customers on behalf of Calyx.

**RESPONSE:** Calyx objects to Request for Production No. 15 as duplicative of Request No. 14. Calyx incorporates its response to Request No. 14.

**REQUEST FOR PRODUCTION NO. 16:** All documents retained on your computer(s), electronic storage device (hard drive, pin drive, etc.) cellular-telephone(s), smartphone, and personal digital assistant(s) (e.g., Palm Pilot, BlackBerry, etc.), including, but not limited to, e-mails, instant messages, or text messages referring, reflecting or relating to Tatum's solicitation of customers, employees vendors, suppliers, or employees on Calyx's behalf.

**RESPONSE:** Calyx objects to Request for Production No. 16 as overly broad, unduly burdensome, and seeking documents irrelevant to any party's claims or defenses and disproportional to the needs of the case, particularly in its request for "all" documents "relating to" Tatum's alleged "solicitation of customers, employees [sic], vendors, suppliers, or employees [sic] on Calyx's behalf." Calyx further objects that the request seeks proprietary business information, which under Grove Bags' own definition constitutes trade secrets. Calyx further objects that the Request is duplicative of Requests Nos. 12-15. Subject to and without waiving any objections, Calyx has produced

responsive records of Tatum's contact with trade show representatives on behalf of Calyx. (*See* CALYX000113–CALYX000184).  Calyx states that it is willing to meet and confer on the remaining categories and may be willing to produce some documents after the entry of a protective order.

**REQUEST FOR PRODUCTION NO. 17:**  All documents retained on your computer(s), electronic storage device (hard drive, pin drive, etc.) cellular-telephone(s), smartphone, and personal digital assistant(s) (e.g., Palm Pilot, BlackBerry, etc.), including, but not limited to, e-mails, instant messages, or text messages referring, reflecting or relating to Cultivated's solicitation of customers, employees vendors, suppliers, or employees on Calyx's behalf.
**RESPONSE:**  Calyx objects to Request for Production No. 17 as duplicative of Request No. 16. Calyx incorporates its response to Request No. 16.

**REQUEST FOR PRODUCTION NO. 28:**  All documents and communications referring, reflecting, or relating to Tatum's duties and responsibilities with Calyx.
**RESPONSE:**  Calyx objects that Request for Production No. 28 is duplicative of Request for Production No. 10.  Subject to and without waiving any objections, Calyx refers Plaintiff to its response to Request for Production No. 10.

**REQUEST FOR PRODUCTION NO. 29:**  All documents and communications referring, reflecting, or relating to Cultivated's duties and responsibilities with Calyx.
**RESPONSE:**  Calyx objects that Request for Production No. 29 is duplicative of Request for Production No. 11.  Subject to and without waiving any objections, Calyx refers Plaintiff to its response to Request for Production No. 11.

**REQUEST FOR PRODUCTION NO. 37:**  All documents and communications referring, reflecting, or relating to training of employees to market the Calyx Competitive Product.
**RESPONSE:**  Calyx objects that Request for Production No. 37 is overly broad, unduly burdensome, seeks documents irrelevant to any party's claims or defenses, is disproportional to the needs of the case, and seeks proprietary business information, which under Grove Bags' own definition constitutes trade secrets.  Subject to and without waiving any objection, Calyx is willing to meet and confer on this request and may be willing to produce some documents after the entry of a protective order.

**REQUEST FOR PRODUCTION NO. 38:**  All documents and communications referring, reflecting, or relating to training of employees to compare the Calyx Competitive Product to the Grove Bags Product.
**RESPONSE:**  Calyx objects that Request for Production No. 38 is overly broad, unduly burdensome, seeks documents irrelevant to any party's claims or defenses, is disproportional to the needs of the case, and seeks proprietary business information, which under Grove Bags' own definition constitutes trade secrets.  Subject to and without waiving any objection, Calyx is willing to meet and confer on this request and may be willing to produce some documents after the entry of a protective order.

**REQUEST FOR PRODUCTION NO. 47:** All documents and communications with Peter Andersson[2] that refer, reflect, or relate to Grove Bags.

**RESPONSE:** Calyx objects that Request for Production No. 47 is overly broad and unduly burdensome.  Calyx further objects to the Request to the extent it seeks information irrelevant to the claim or defense of any party and/or documents not within Calyx's possession, custody, or control.  The Request is also vague in that it seeks communications "with Peter Andersson" without identifying the other party to the communication.  The Request also contains no temporal or subject matter limitation. Subject to and without waiving any objection, the responsive documents Calyx located after a reasonably diligent search are produced herewith.  (*See* CALYX000444, CALYX000473, CALYX000504, CALYX000643-CALYX000645, CALYX000818, CALYX000820, CALYX000823, CALYX001051, CALYX0001069).  Calyx states that it is willing to meet and confer on this request and may be willing to produce further documents after the entry of a protective order.

**REQUEST FOR PRODUCTION NO. 48:** All documents and communications between Tatum and Peter Andersson that refer, reflect, or relate to Grove Bags.

**RESPONSE:** Calyx objects that Request for Production No. 48 is duplicative of Request No. 47. Calyx refers Plaintiff to its response to Request No. 47.  Subject to and without waiving any objection, the responsive documents Calyx located after a reasonably diligent search are produced herewith.  (*See* CALYX000644-CALYX000645, CALYX000818, CALYX000820, CALYX000823, CALYX0001069).  Calyx states that it is willing to meet and confer on this request and may be willing to produce further documents after the entry of a protective order.

**REQUEST FOR PRODUCTION NO. 50:**  All documents that you identified in response to Plaintiff's interrogatories that have not been produced in response to any other document request stated herein.

**RESPONSE:**  Subject to and without waiving any objection, Calyx states that it is not aware of any documents meeting this description at this time.

### C. Calyx Should Be Ordered To Pay Grove Bags' Fees And Costs Associated With This Motion.

This Court should order Calyx to pay Plaintiff's reasonable expenses incurred in making the motion, including attorney's fees pursuant to Rule 37(a)(5)(A).  None of the exceptions to fees are present in this case.  Specifically, Grove Bags has fully met and conferred, in good faith, prior to filing this Motion.  The above documents were revealed in depositions.  Grove Bags' counsel raised the production issues in depositions, sent two letters, and met via Teams with counsel for a

---

[2] Andersson is the Director of Product Development.  (Dep. Anderrson at 6).

lengthy discussion. (Dec. Counsel at 43). Accordingly, the first exception has no applicability to this case.

The second exception is if Calyx's objections are "substantially justified." Fed. R. Civ. P. 37(a)(5)(A)(ii). Calyx has no basis for its failure to produce documents relating to Tatum's Calyx job duties. Moreover, even when documents were revealed and their existence confirmed, Calyx refused to supplement its document production or to keep depositions open to later provide the documents. (Dec. Counsel at 44-46). The known documents relevant to this lawsuit have been identified through depositions, confirmed by Calyx that they exist, yet still not produced over the last few weeks. These are documents that are readily accessible by Calyx through a search of its internal system and easy to produce (indeed, Calyx employees have already confirmed they exist) – the work to supplement is minimal. In sum, Calyx has acted unreasonably, caused Grove Bags unnecessary expense, and therefore, fees should be awarded to Grove Bags.

### D.     Calyx And Its Counsel Should Be Sanctioned Pursuant To Rule 26(g).

Rule 26(g)(1) concerns an attorney's certification of discovery response.   Fed. R. Civ. P. 26(g)(1); *Jones v. Dick's Sporting Goods, Inc.*, Case No. 1:24-CV-00619, 2025 WL 2045618 *4 (N.D. Ohio July 22, 2025). Calyx's counsel confirmed the following when the firm signed Calyx's discovery responses:

> (B) with respect to a discovery request, response, or objection, it is:
>
> (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;
> (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
> (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Fed. R. Civ. P. 26(g)(1)(B).

"'The attorney's signature 'certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand.'"  *Jones*, 2025 WL 2045618 at *5.  (*citing Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485, 502 (N.D. Ohio 2013)).  Based on the discovery failures and Calyx's counsel's refusal to supplement documents, even after their existence was confirmed by Calyx employees, Calyx's counsel could not have conducted a good faith investigation.  (Dec. Counsel at __).  Moreover, had an investigation been conducted, any reasonable counsel would immediately supplement once new documents were identified and confirmed.  However, in this case, Calyx's counsel refused even the most basic supplementation and forced Grove Bags' counsel to engage in significant time and resources in addressing these discovery issues, including this Motion to Compel.  (Dec. Counsel at 44-47).   Rule 26(g)(3) permits this Court to sanction Calyx's counsel for violation of Rule 26(g).  *Jones*, 2025 WL 2045618 at *5; Fed. R. Civ. P. 26(g)(3).

Here, Calyx's counsel should be ordered to (1) supplement its document production; (2) reopen the depositions conducted by Grove Bags after Calyx supplement its document production; and (3) to pay Grove Bags' fees and costs associated with the time and expense of filing this Motion to Compel and for reopening the depositions due to Calyx's discovery failures.

## V.    <u>CONCLUSION</u>

Based on the above-cited arguments and authorities, Grove Bags' Motion should be granted and Calyx should be ordered to provide complete responses to Interrogatory 8 and Document Requests 9, 10, 11, 12, 13, 14, 15, 16, 17, 28, 29, 37, 38, 47, 48, and 50.  In addition, this Court should order Calyx to pay Plaintiff's reasonable expenses incurred in making the motion pursuant to Rule 37(a)(5)(A) and to sanction Calyx's counsel pursuant to Rule 26(g)(3).

Respectfully submitted,

/s/ David A. Campbell_____
David A. Campbell (0066494)
Y. Timothy Chai (0092202)
**GORDON REES SCULLY MANSUKHANI**
127 Public Square, Suite 5130
Cleveland, Ohio 44114
T: (216) 302-2531
F: (216) 539-0026
dcampbell@grsm.com
tchai@grsm.com

*Attorneys for Plaintiff Kinzie Advanced*
*Polymers, LLC d/b/a Grove Bags*

16

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 1st of December, 2025, a true and accurate copy of the foregoing motion was electronically filed with the Court and served through the Court's online service process.

                     */s/David A. Campbell*

                     *Attorney for Plaintiff Kinzie Advanced Polymers, LLC d/b/a Grove Bags*

17