UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KINZIE ADVANCED POLYMERS, LLC d/b/a GROVE BAGS, | ) ) ) | Case No. 1:24 CV 1887 |
| Plaintiff | ) ) | JUDGE SOLOMON OLIVER, JR. |
| v. | ) ) | |
| CALYX CONTAINERS, LLC *et. al,* | ) ) ) | |
| Defendants | ) | ORDER |

Currently pending before the court in the above-captioned case is Plaintiff Kinzie Advanced Polymers, LLC d/b/a Grove Bags's Motion to Compel against Defendant Calyx Containers, LLC ("Motion") (ECF No. 64). For the following reasons, the court grants in part and denies in part the Motion.

## I. BACKGROUND

This lawsuit involves two competing cannabis packaging companies, Grove Bags ("Plaintiff" or "Grove Bags") and Calyx Containers, LLC ("Calyx"), owned and operated by former college friends and fraternity brothers, and a third person, Defendant Michael Ryan Tatum ("Tatum"), who worked for one, and then worked for the other.

On October 29, 2024, Plaintiff filed a seven-count Complaint (ECF No. 1), alleging Breach of Contract - Employment Agreement (Count I) and Breach of Contract - Severance Agreement (Count II) against Defendant Michael Ryan Tatum, as well as Misappropriation of Trade Secrets (Count III), Tortious Interference with Economic and/or Business Relations (Count IV), Civil

Conspiracy (Count VI), and Injunctive Relief (Count VII) against Tatum and Calyx, and Tortious Interference with Economic, Contract, and/or Business Relations (Count V) against Calyx. Plaintiff later filed an Amended Complaint (ECF No. 9) on January 10, 2025, asserting the same seven counts, but adding one for Deceptive Trade Practices against Calyx and Tatum.[1] (Am. Compl. at PageID 274.)

On December 24, 2024, Plaintiff filed a Motion for Preliminary Injunction (ECF No. 5), which, after a three-day hearing, the court granted in part and denied in part on August 21, 2025. In its Preliminary Injunction Order (ECF No. 56), the court enjoined Tatum from being employed by, or performing services on behalf of Calyx with or without compensation, as well as from being employed by, or performing services on behalf of, any other company or its affiliates whose business activities include the manufacturing, marketing, distribution, or sale of packaging, including packaging, targeting the hemp and/or cannabis industries. *Kinzie Advanced Polymers, LLC v. Calyx Containers, LLC*, No. 1:24 CV 1887, 2025 WL 2418908 (N.D. Ohio Aug. 21, 2025) The court also enjoined Calyx from renewing any contractual relationship with Tatum or receiving Tatum's services with or without compensation. Within a week of receiving the preliminary injunction, the parties entered into a Stipulated Protective Order (ECF No. 58).

On September 17, 2025, the court granted in part and denied in part Defendants' respective Motions to Dismiss (ECF No. 61). *Kinzie Advanced Polymers, LLC v. Calyx Containers, LLC*, No. 1:24 CV 1887, 2025 WL 2903642 (N.D. Ohio Sept. 17, 2025). As a result, only four of Plaintiff's original seven claims remain: Counts I and II for Breach of Contract against Tatum; Count III for

---

[1]     The parties stipulated during the Hearing that Plaintiff's Deceptive Trade Practices claim was not part of the preliminary injunction. (Tr. at PageID 996.)

-2-

Misappropriation of Trade Secrets against Tatum and Calyx; and Count V for Tortious Interference with Contract against Calyx. Shortly thereafter, on October 1, 2025, Defendants filed their Answers to the Amended Complaint. (*See* Calyx Answer, ECF No. 62; Tatum Answer, ECF No. 63.)

Approximately two weeks later, the parties' motion practice began again. Between October 13, 2025 and December 2, 2025, Plaintiff filed five discovery-related motions: Motion to Compel Discovery Against Calyx (ECF No. 64) ("Discovery Motion 64"); Motion for Sanctions for Failure to Preserve Electronically Stored Information Against Calyx and Tatum (ECF No. 65) ("Discovery Motion 65"); Motion to Strike the Objection Filed by 420 Magazine, Inc. (ECF No. 72) ("Discovery Motion 72"); Motion to Compel Discovery Against Calyx with Respect to the Services Performed by Defendant Michael Ryan Tatum for Calyx Containers (ECF No. 78) ("Discovery Motion 78"); and Motion to Compel Discovery against Calyx with Respect to Calyx Containers, LLC Improper Pesticide Scheme with Michael Ryan Tatum (ECF No. 79) ("Discovery Motion 79"). Plaintiff also filed a Motion for Civil Contempt and Contempt Sanctions against Defendants ("Contempt Motion") on December 2, 2025, for "willfully violating the Injunction Order." (ECF No. 80.)

Of the pending discovery-related motions, ECF Nos. 64, 65, 78, and 79 are fully briefed. (*See* Calyx Opp'n to Disc. Mot. 64 at ECF No. 67 and Pl. Reply at ECF No. 70; Tatum Opp'n to Disc. Mot. 65 at ECF No. 69, Calyx Opp'n to Disc. Mot. 65 at ECF No. 74, and Pl. Reply at ECF No. 75; Calyx Opp'n to Disc. Mot. 78 at ECF No. 88 and Pl. Reply at ECF No. 89; Calyx Opp'n to Disc. Mot. 79 at ECF No. 84 and Pl. Reply at ECF No. 87.) Plaintiff's Motion for Contempt is also fully briefed. (*See* Calyx Opp'n to Contempt Mot. at ECF No. 82, Tatum Opp'n to Contempt Mot. at ECF No. 83, and Pl. Reply at ECF No. 85.) 420 Magazine has not responded to Plaintiff's Motion to Strike (ECF Nos. 71, 72).

On November 24, 2025, the parties jointly moved to extend the Case Management Schedule (ECF No. 77), which the court granted during a telephonic status conference with counsel for the parties on December 10, 2025 (ECF No. 81). Under the new schedule, it is the court's ruling on Discovery Motion 64 that dictates when Plaintiff's expert report(s) become due. As such, the court only addresses Discovery Motion 64 in this Order.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…" Fed. R. Civ. P. 26(b)(1). Pursuant to Rule 37(a)(1), when an opposing party fails to produce permitted discovery, "a party may move for an order compelling disclosure or discovery" so long as the movant has "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). On a motion to compel, the movant bears the initial burden of showing that the information sought is relevant. *Delta T, LLC v. Williams*, 337 F.R.D. 395, 398 (S.D. Ohio 2021). If the movant satisfies this burden, then the opponent of the motion to compel must show that producing the information would be unduly burdensome. *Id.* (internal citations omitted).

The Sixth Circuit has determined that "the scope of discovery is within the sound discretion of the trial court." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993). Evidence is discoverable if it is non-privileged and relevant to the claims or defenses of either party or "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); *see also Lewis v. AB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). In other words, "a plaintiff should have access to

-4-

information necessary to establish [its] claim, but [] a plaintiff may not be permitted to 'go fishing[.]'" *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 854 (6th Cir. 2017).

### III. DISCUSSION

Plaintiff moves for an order compelling Defendant Calyx to respond to three of Plaintiff's interrogatories and 20 document requests. (Mot. at PageID 1452.) Plaintiff also seeks to recover the fees and costs incurred in filing the Motion. (*Id.*) Calyx opposes the Motion, arguing that the court should sustain Calyx's clear and timely objections to Plaintiff's discovery requests because Plaintiff has not met its initial burden to show that the information sought is relevant. (Opp'n at PageID 1568, 1573.)

As an initial matter, Plaintiff certifies that it conferred or attempted to confer with Calyx about the discovery disputes pursuant to Rule 37(a)(1), and Calyx does not dispute that the parties conferred in good faith. (*Id*; Campbell Decl. at PageID 1470.) Thus, the court examines whether Plaintiff meets its burden of showing that its three challenged interrogatories and 20 document requests are relevant.

When considering relevance on a motion to compel, the court must decide if "there is *any* possibility that the information sought may be relevant to a claim or defense raised in the litigation." *Transamerica Life Ins. Co. v. Moore*, 274 F.R.D. 602, 609 (E.D. Ky. 2011) (emphasis in original) (cleaned up). Courts should construe "relevance" broadly to include "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Id.* (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). A party's discovery request is considered to be overly broad or unduly burdensome on its face if it "(1) uses an omnibus term . . . and (2) applies to a general category or group of documents or a broad range of

information." *Sunless, Inc. v. Palm Beach Tan, Inc.*, No. 5:21 CV 248, 2022 WL 22897429, *4 (N.D. Ohio Sept. 30, 2022) (quoting *Transamerica Life Ins. Co.*, 274 F.R.D. at 609). The court considers each of the challenged interrogatories and document requests under this standard in turn.

**A.      Interrogatories**

The three disputed interrogatories generally ask Calyx to identify communications it had with people associated with Grove Bags, as well as communications with current or potential customers that refer to Grove Bags or concern Calyx's competing packaging product, Calyx Cure. (Mot. at PageID, 1459–61, Interrogs. 10, 11, 13.) Plaintiff contends that, "[t]he three interrogatories are plainly relevant to this lawsuit." (*Id.* at PageID 1459.) Calyx generally argues that the requests are overbroad and seek irrelevant information, and it asserts that Grove Bags provides no substantive argument as to why Calyx's objections are inappropriate. (Opp'n at PageID 1572–74.)

*1.      Interrogatory No. 10*

Interrogatory 10 asks Calyx to "[i]dentify all communications you have had with Grove Bags, Grove Bags' employees, Grove Bags' agents, Grove Bags' vendors, Grove Bags' suppliers, Grove Bags' customers, and/or Grove Bags' contractors since August 25, 2023, and, for each such communication, state the persons you communicated with, the form of the communication, the substance of the communication, and the date of the communication." (Mot. at PageID 1459.) Calyx objected on the grounds that the request is overly broad, unduly burdensome, assumes Calyx knows the identities of people associated with Grove Bags, and that the information is irrelevant to any party's claims or defenses. (*Id.*)

In its Motion, Plaintiff states that: "Interrogatory number ten seeks information regarding Calyx's communications with Grove Bags' employees and related parties." (*Id.*) Calyx argues that

Grove Bags is in a better position to identify any Grove Bags employees and agents with whom Calyx communicated. (Opp'n at PageID 1572.) Calyx also asserts that, as written, the interrogatory would include communications about Calyx products or services that are not at issue in this case, such as the other packing products Calyx sells that do not directly compete with Grove Bags' product. (*Id.*) In response, Plaintiff contends that the information requested is relevant because discovery has shown Calyx's solicitations directly reference Grove Bags, and at a minimum, Calyx should confirm which individuals and entities it communicated with and which ones discussed Calyx Cure. (Reply at PageID 1630.)

Upon review of the interrogatory and after considering the parties' arguments, the court finds Defendant's position well-taken. The court agrees with Calyx that the subject matter requested is not limited to the issues in this case—namely, what trade secrets Calyx may have misappropriated in support of its competing packaging product, and whether the information resulted from Calyx's contract with Tatum. Rather, the request seeks "all communications" and then requires Calyx to provide the "substance of the communication" as part of the disclosure.  The interrogatory may produce some information to which Plaintiff is entitled. However, the request, as written, is overly broad and likely to produce information with questionable relevance.  Accordingly, the court sustains Calyx's objection to Interrogatory 10. Plaintiff is encouraged to confer with Calyx and reach an agreement on the information that aligns with the relevant time period, people, and issues in this case.[2]

     2.     *Interrogatory 11*

---

[2]     "It is not the function of the Court to redraft discovery requests." *Telerico v. Lynch*, No. 1:08 CV 1680, 2009 WL 10719832, at *3 (N.D. Ohio Jan. 12, 2009).

Interrogatory 11 asks Calyx to "identify the name, work and home address, telephone number, and e-mail address of all persons or entities you solicited or contacted regarding the Calyx Competitive Product." (Mot. at PageID 1460.) Calyx objected on the grounds that the request was overly broad, unduly burdensome, the information sought was irrelevant and disproportional to the needs of the case, and seeks proprietary business information. (*Id.*) In its Motion, Plaintiff states that, "Interrogatory number 11 seeks information regarding Calyx's customer solicitations regarding Calyx Cure, defined as Calyx Competitive Product." (*Id.* at PageID 1459.)

Defendant argues the request is not tailored to the issues in the case, nor temporally limited to Tatum's tenure with Calyx. (Opp'n at PageID 1573.) Plaintiff counters by citing the court's October 23, 2025 Status Conference Order (ECF No. 66) and stating that Grove Bags has presented evidence that Tatum had possession of its customer list during his contract with Calyx. (Reply at PageID 1630.) As such, Plaintiff continues, it should see Calyx's complete solicitation list to prove whether or not Tatum used Grove Bags' customer list to market Calyx Cure.

It is unclear why Plaintiff cites to the court's October 23, 2025 Status Conference Order in support of its argument since nothing in the Order mentions Grove Bags presenting evidence of Tatum possessing its customer list while working for Calyx. Even so, the court agrees that the list of entities or persons Calyx solicited or contacted regarding Calyx Cure is relevant to its misappropriation of trade secrets claim against Tatum and Calyx because the list may reveal persons or entities Grove Bags solicited or contacted regarding its packaging product. Accordingly, the court overrules Calyx's objection to Interrogatory 11. However, this ruling is made on the assumption that the parties have a protective order in place, and the court restricts the information sought to that arising after August 25, 2023.

### 3. *Interrogatory 13*

Interrogatory 13 asks Calyx to "[d]escribe with specificity any communications you have had with customers or prospective customers that refer, reflect, or relate to Grove Bags or the Grove Bags Product since August 25, 2023 and, for each such communication, state the persons you communicated with, the form of the communication, the substance of the communication, and the date of the communication." (Mot. at PageID 1460.) Calyx objected on the grounds that the request was overly broad, unduly burdensome, seeks irrelevant information, is vague in its instruction, and seeks proprietary information. (*Id.*)

In its Motion, Plaintiff states that "interrogatory number 13 states information regarding Calyx's communications to customers and prospective customers referring to Grove Bags." (*Id.*) Calyx argues the court should sustain its objection to Interrogatory 13 because many of the requested communications would pre-date Tatum's work for Calyx, and others are likely with customers whom Calyx had a pre-existing relationship prior to Tatum joining the team. (Opp'n at PageID 1573.) Plaintiff responds that the objection should be overruled because discovery shows Calyx's solicitation references Grove Bags, and that it has presented evidence that Tatum had possession of Grove Bags' customer list while working for Calyx. (Reply at PageID 1630–31.)

Unlike Interrogatory 10, Plaintiff limits the subject matter of the requested communications to those with customers or prospective customers that refer, reflect, or relate to Grove Bags or the Grove Bags Product. Such a communication could show, for example, Calyx comparing its directly competing product to a prospective customer who is already a Grove Bags customer. This kind of communication could bear on Plaintiff's misappropriation of trade secrets claim, both in terms of Plaintiff's customer list, documents, and information related to the manufacturing and selling of the

-9-

Grove Bags' Product. Furthermore, Plaintiff limits the communications requested to those occurring after Tatum left Grove Bags. While Calyx correctly notes that this date precedes Tatum's contract with Calyx, the record also indicates that Calyx approached Tatum about working together as early as October 2023. (Prelim. Inj. Order at PageID 1300, ECF No. 56.) Given the brief period between Tatum working for Grove Bags and Calyx soliciting his services, the court finds that Plaintiff's request for communications since August 25, 2023, is not overly broad or unduly burdensome. Accordingly, the court overrules Calyx's objection to Interrogatory 13.

### 4. Conclusion

For the foregoing reasons, the court sustains Calyx's objection to Interrogatory 10 and overrules its objections to Interrogatories 11 and 13.

## B. Document Requests

The 20 disputed document requests fall into three categories: 1) Tatum's involvement, if any, in the development of Calyx Cure (Reqs. 3, 18, 23–24, 37–38); 2) the development timeline for and Tatum's role in Calyx Cure (Reqs. 47–48); and 3) Tatum's alleged role in selling Calyx Cure (Reqs. 14–17, 19, 22, 36, 39–40, 44–46). (Mot. at PageID 1461–67.) Calyx contends that the 20 disputed requests for production of documents are also overbroad and seek irrelevant information. (Opp'n at PageID 1574.) The court evaluates each category of requests in turn.

### 1. Tatum's Alleged Involvement in Developing Calyx Cure: Reqs. 3, 18, 23–24, 37–38

In its Motion, Plaintiff merely states that, "[a] key point of discovery is whether Tatum assisted in the development of Calyx Cure[,]" and that requests 3, 18, 23–24, and 37–38 address the issue. (Mot. at PageID 1461–63.) Calyx generally objects to these requests on the grounds that they are overly broad, unduly burdensome, seek documents irrelevant to any party's claims or defenses,

and that they seek proprietary business information, "which under Grove Bags' own definition constitutes trade secrets." (*Id.* at PageID 1461–63.) Calyx also noted in all of its responses that it may be willing to produce some of the documents requested after the entry of a protective order. (*Id.*)

Request 3 asks Calyx to "[p]roduce a full, complete and unredacted copy of formula for the Calyx Competitive Product [sic]." (*Id.* at PageID 1461.) Calyx argues the court should sustain its objection because the design of Calyx Cure is irrelevant given that Plaintiff does not allege, and there is no evidence to suggest, that Tatum knew of Plaintiff's TerpLoc formula, that Tatum provided information related to TerpLoc's design or formula to Calyx, or that Tatum participated in developing or designing Calyx Cure. (Opp'n at PageID 1574.) Calyx also asserts that it should not be ordered to produce its trade secret—the formula for Calyx Cure—when there is no evidence that the design of the product is at issue. (*Id.* at PageID 1575.) In response, Plaintiff cites to the court's October 23, 2025 Status Conference Order (ECF No. 66), and asserts that because "Tatum has destroyed his Grove Bags' phone," the formula is needed to determine whether Calyx used Grove Bags' TerpLoc formula as a basis for Calyx Cure. (Reply at PageID 1631.)

First, it is unclear why Plaintiff cites the October 23, 2025 Status Conference in support of its argument that the Calyx Cure formula is discoverable because Tatum allegedly destroyed his phone when all that Order says is that there is a pending motion for sanctions about the issue. Second, and as Calyx points out, Plaintiff does not allege that its TerpLoc formula is the basis for Calyx Cure. On the contrary, Plaintiff's Amended Complaint says, "Calyx's packaging products are not comparable to Grove Bags' packaging products." (Am. Compl. ¶ 141.) While Plaintiff does allege that its valuable business information and trade secrets includes "information and documents relating to the manufacturing and selling of TerpLoc" (Am. Compl. ¶ 79), Plaintiff should first

-11-

exhaust discovery as to what information Tatum had about TerpLoc, and any involvement he had in its development. Absent this discovery, the court declines at this time to order Calyx to turn over to its direct competitor its own critical trade secret. *See R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 269 (6th Cir. 2010) (quoting *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 326 (10th Cir. 1981)) ("It is within the sound discretion of the trial court to decide whether trade secrets are relevant and whether the need outweighs the harm of disclosure"). Accordingly, the court sustains Calyx's objection to request 3.

In document request 18 Plaintiff asks for "[a]ll documents retained on your computer(s), electronic storage device (hard drive, pin drive, etc.) cellular-telephone(s), smartphone, and personal digital assistant(s) (e.g., Palm Pilot, BlackBerry, etc.), including, but not limited to e-mails, instant messages, or text messages referring, reflecting or relating to the marketing of the Calyx Competing Product." (Mot. at PageID 1461.) Document requests 23 and 24 ask for the same, but alter the subject matter slightly. Request 23 asks for documents "referring, reflecting or relating to the Calyx Competitive Product," and request 24 asks for documents "referring, reflecting or relating to sales of the Calyx Competitive Product." (*Id.* at PageID 1462.) Calyx objected to these three requests on the grounds that they were overly broad, unduly burdensome, seek documents that are irrelevant to any party's claims or defenses, and disproportional to the needs of the case. (*Id.* at PageID 1461–62.)

Plaintiff does not specifically explain why the information sought through these requests is discoverable, only that they address whether Tatum assisted in the development of Calyx Cure. (*Id.*) In its Opposition, Calyx reiterates its objection that the requests are overly broad, stating that

> It is not clear why production of *every single digitally stored document related in any way to Calyx Cure* is necessary to determine whether Tatum assisted in the development of Calyx Cure. Calyx's

-12-

> position is not that zero documents related to Calyx Cure are discoverable in this case – Calyx has already produced over 1,000 pages of documents, the majority of which relate to Calyx Cure, including unredacted sales invoices. But these Requests are overbroad and objectionable, and it is neither Calyx's nor the Court's job to rewrite them to correct their overbreadth.

(Opp'n at PageID 1576–77.) Plaintiff tries to defend the requests in its Reply, stating in response to Calyx's time limitation argument that "Calyx has testified that it began to develop Calyx Cure '[a]round 2023.' (ECF No. 56, pg. 4)."

Upon review of the three requests, Calyx's argument that they are all overly broad is well-taken. Indeed, Plaintiff appears to admit that these requests could be time limited to a period starting in 2023. As the requests are written now, however, Plaintiff has not met its burden to show why all digitally stored documents related in any way to Calyx Cure from all time are discoverable. Thus, Calyx's objections to requests 18, 23, and 24 are sustained. Plaintiff is encouraged to confer with Calyx and reach an agreement on the documents that align with the relevant time period and issues in this case.

Turning to requests 37 and 38, these ask, respectively, for "[a]ll documents and communications referring, reflecting, or relating to training of employees to market the Calyx Competitive Product," and "[a]ll documents and communications referring, reflecting, or relating to training of employees to compare the Calyx Competitive Product to the Grove Bags Product." (Mot. at PageID 1462.) Again, Plaintiff's sole support for these requests is that they address whether Tatum assisted in developing Calyx Cure. (*Id.*) Calyx objected to requests 37 and 38 as overly broad, unduly burdensome, irrelevant, and seeking proprietary business information. (*Id.*)

Calyx asserts that the court should sustain its objections because there is no "connection

between the development of Calyx Cure (and Tatum's alleged involvement in that process) and

Calyx's marketing training, or training of employees to compare the two products." (Opp'n at

PageID 1577.) Plaintiff responds to this argument by stating:

> But Tatum testified he was involved in sales training for Grove Bags,
> he was involved in marketing for Calyx, and Grove Bags has
> presented evidence Tatum had Grove Bags' customer list in his
> possession (and then intentionally destroyed his phone), and sales
> indisputably address damages. Accordingly, these Requests are
> relevant, specific to topics at issue in this lawsuit, and Calyx should
> be ordered to provide complete responses.

(Reply at PageID 1632.)

The court agrees with Calyx that requests 37 and 38 appear disconnected from Plaintiff's

original argument that they address Tatum's alleged participation in developing Calyx Cure.

Nevertheless, the requests do seek discovery relevant to Plaintiff's misappropriation of trade secrets

claim. Indeed, Plaintiff alleges that its training and marketing materials, along with its customer lists

are trade secrets, thus documents and communications related to the marketing of Calyx Cure, and

the training of employees on comparing Calyx Cure to Grove Bags' competing product, are relevant.

Therefore, while Plaintiff's initial rationale for requests 37 and 38 appears unrelated, the

requests still seek information that, on its face, is discoverable. As such, the court overrules Calyx's

objections to requests 37 and 38. The court makes this ruling on the assumption that the parties have

a protective order in place.

In conclusion, the court sustains Calyx's objections to requests 3, 18, 23, and 24, and

overrules Calyx's objections to requests 37 and 38.

*2.    The Timeline and Tatum's Role in Developing Calyx Cure: Reqs. 47–48*

Document requests 47 and 48 seek, respectively, "[a]ll documents and communications with

Peter Anderson that refer, reflect, or relate to Grove Bags," and "[a]ll documents and communications between Tatum and Peter Anderson that refer, reflect, or relate to Grove Bags." (Mot. at PageID 1463.) Peter Anderson is Calyx's Director of Product Development. (*Id.*) Calyx objected to request 47 as overly broad, unduly burdensome, irrelevant, vague, and lacking a temporal or subject matter limitation; however, it provided 10 documents in response. (*Id.*) Calyx objected to request 48 as being duplicative of request 47, but provided another six documents in response. (*Id.*) At the end of both objections, Calyx stated its willingness to meet and confer on the requests and that it may be willing to produce further documents after the entry of a protective order. (*Id.*)

Plaintiff argues in its Motion that the communications requested "would demonstrate the dates Calyx Cure was initiated, the timeline for development, and Tatum's role in the Calyx Cure development." (*Id.*) Calyx argues that the court should sustain its objections because it did provide some responses to the requests, but also questioned the relevance of the information sought, stating "it is not clear why Grove Bags asked for communications between Tatum and Anderson that relate to Grove Bags, as opposed to communications related to Calyx Cure or the timeline of its development." (Opp'n at PageID 1578.)  In its Reply, Plaintiff contends Calyx's objection about a lack of a temporal limitation is inappropriate, given communications may show that Tatum and Anderson were communicating while Tatum still worked for Grove Bags. (Reply at PageID 1632.) Plaintiff does not respond to Calyx's reference to the documents already provided in response to the requests.

With regard to request 47, the court agrees with Defendant that it is overly broad and could result in the production of irrelevant documents and communications given it does not specify a time range or who the communications may have been with. Plaintiff does not explain why Peter

Anderson's communications with people other than Tatum are necessary to its claims. Moreover, Plaintiff's Reply brief only addresses Calyx's arguments as they pertain to possible communications between Tatum and Peter Anderson. (Reply at PageID 1632.) Given that Calyx has already produced some responses to request 47, and Plaintiff does not explain why it wants Peter Anderson's communications with individuals other than Tatum, the court sustains Defendant's objection to Request 47.

Request 48, however, is more on point. If there are communications between Tatum and Peter Anderson that happened while Tatum worked for Grove Bags, those may be relevant to Plaintiff's claims that Calyx tortiously interfered in Tatum's contract with Grove Bags, and misappropriated Grove Bags' trade secrets through interactions with Tatum during or after his Grove Bags tenure. Accordingly, the court overrules Defendant's objections to request 48.

> 3. *Tatum's Alleged Role in Selling Calyx Cure: Reqs. 14–17, 19, 22, 36, 39–40, 44–46*

Plaintiff contends that the remaining 12 document requests address damages and Tatum's role in selling Calyx Cure. (Mot. at PageID 1464–67.) Calyx argues that the court should sustain its objections because several requests, specifically requests 14–17, and 36, contain no limitation as to product or industry, and are therefore not narrowly tailored to the issues here. (Opp'n at PageID 1578.) Calyx also asserts that request 19, which seeks documents relating to MJBizCon, is not properly time bound or focused on information relating to Tatum. (*Id.* at PageID 1579.) Requests 22, 39, and 40 are similarly objectionable, Calyx contends, because they are overly broad, irrelevant, vague, and do not focus on solicitations for Calyx Cure or appear connected to Tatum and his work for Calyx. (*Id.*) Lastly, Calyx maintains that it should not be ordered to respond to requests 44–46 because they are overly broad, duplicative, and do not specify how they relate to Grove Bags. (*Id.*

at PageID 1580.)

Starting with requests 14–17, and 36, Plaintiff does not respond to Calyx's argument that the requests are not narrowly tailored to the issues here. Rather, Plaintiff states, "Cultivated is Tatum's consulting business that contracted with Calyx. This Court has already enjoined Tatum. (ECF No. 56). Accordingly, there is no basis for Calyx to not produce these highly relevant documents." (Reply at PageID 1633.) Between this statement and merely asserting that these five requests (plus the seven others in this category) "address damages and Tatum's role in the sales of Calyx Cure," (Mot. at PageID 1464), Plaintiff does not advance a coherent argument for why the court should compel Calyx to fully respond. It is true that Tatum's and his consulting business's role in the sales of Calyx Cure are relevant to Plaintiff's claims. But as written, the requests are overly broad and unduly burdensome because they ask for a general category of documents, within a broad range of information, i.e. "all documents" in which Tatum or Cultivated solicits customers, employees, vendors, or supplies on Calyx's behalf. Plaintiff is well-aware that Calyx operates in more than just the cannabis and hemp packaging industry. Because that is the industry at issue in this case, its requests about Tatum's or Cultivated's sales efforts on behalf of Calyx should reflect that focus.

Resultantly, the court sustains Calyx's objections to requests 14–17, and 36, and it encourages Plaintiff to meet and confer with Calyx to reach an agreement on what documents align with the relevant time period and industries relevant to this case.

Next, request 19 seeks documents relating to MJBizCon. (Mot. at PageID 1465.) Calyx objected to request 19 on the grounds that it was overly broad and seeks proprietary business information. (*Id.*) Calyx further argues that, because MJBizCon is an annual trade show that Calyx has attended for years, the request should be limited to the specific years or events at issue in this

case. (Opp'n at PageID 1579.)

As discussed at the Preliminary Injunction Hearing, MJBizCon is an annual, three-day trade show event attended by 30,000 cannabis industry executives from around the Globe. (Prelim. Inj. Order at PageID 1296; Am. Compl. ¶ 177.) The Conference relevant here occurred in 2024. That year, Plaintiff, Calyx, and Tatum all attended MJBizCon, but instead of representing Plaintiff during it, Tatum represented Calyx. (Prelim. Inj. Tr. at PageID 915, ECF No. 49; Am. Compl. ¶¶ 176–180.) Because Plaintiff's allegations related to MJBizCon only concern what happened at the 2024 Conference, request 19 should be limited to those documents pertaining to the 2024 MJBizCon event. The court also agrees that the request is overly broad in that it does not tie MJBizCon to the issues relevant here. As written, request 19 could produce numerous documents that have no connection to the Calyx Cure product or Tatum's work for Calyx. Thus, the request should be limited to the subject matter relevant to Plaintiff's claims.

Consequently, the court sustains Calyx's objection to request 19, and encourages Plaintiff to meet and confer with Calyx to reach an agreement on what documents align with the relevant time period, 2024, and the communications relevant to this case, i.e., those referring, reflecting, or relating to Tatum, Calyx Cure, and Grove Bags.

Turning to requests 22, 39, and 40, through these, Plaintiff seeks documents and communications referring, reflecting, or relating to the solicitation of current Grove Bags' customers, sales programs targeted at Grove Bags' customers, and to contracts with third parties relating to sales programs targeting Grove Bags customers. (Mot. at PageID 1465–66.) Calyx once again objects on the grounds that the requests are overly broad and burdensome, but also that they are vague and ambiguous. (*Id.*)

-18-

In its Motion, Plaintiff only contends that these three requests address damages and Tatum's role in the sale of Calyx Cure. (*Id.* at PageID 1464.) Calyx argues that the court should sustain its objections because the requests are not time-limited, do not focus on solicitations for Calyx Cure, nor do they appear connected to Tatum and his work for Calyx. (Opp'n at PageID 1579.) Calyx explains that many cannabis companies may purchase products from both Calyx and Grove Bags, for example, Calyx may solicit Grove Bags' customers for their rigid plastic or glass container needs, products that Grove Bags does not offer. (*Id.*) Thus, Calyx contends, the request calls for documents irrelevant to the present issues. (*Id.*) In its Reply brief, Plaintiff asserts, without directly responding to Calyx's position, that:

> Grove Bags is entitled to review these communications to determine if Tatum has provided confidential information to Calyx and whether Calyx is utilizing Tatum's former relationship with Grove Bags in the communications. The only manner for Grove Bags to determine the use of its trade secrets and confidential information is to see Tatum's communications and the Calyx customer solicitations. There is no basis for Calyx to refuse to produce these documents.

(Reply at PageID 1634–35.) Interestingly, Plaintiff's response specifies its need to see "Tatum's communications," but as written, the three requests reach beyond Tatum's communications. Instead, they seek communications with customers currently using the Grove Bags' Product, TerpLoc, and communications with potentially anyone, about Calyx's sales programs targeted at Grove Bags' TerpLoc customers. The disconnect between Plaintiff's basis for the requests and the requests themselves demonstrates their overbreadth. Therefore, the court sustains Calyx's objections to requests 22, 39, and 40, but it also encourages Plaintiff to meet and confer with Calyx to reach an agreement on what documents correspond with the parties and specific subject matter at issue in this case—namely, Tatum and Calyx's competing product, Calyx Cure.

Finally, requests 44–46 ask, respectively, that Calyx provide "[a]ll documents and communications between Tatum and Stephen Hess-Morrone," "[a]ll documents and communications between Cultivated and Stephen Hess-Morrone," and "[a]ll documents and communications with Stephen Hess-Morrone that refer, reflect, or relate to Grove Bags." (Mot. at PageID 1466–67.) Calyx objected to requests 44 and 45 as being overly broad and unduly burdensome, and Request 46 as being duplicative of request 44. (*Id.*)

Again, Plaintiff's Motion lumps these three requests in with the others discussed under the category of "Tatum's Alleged Role in Selling Calyx Cure," and argues only that these requests seek sales information and address damages and Tatum's role in the sales of Calyx Cure. (*Id.* at PageID 1464.) Calyx contends that its objections to requests 44 and 45 should be sustained because there are no temporal or subject matter limitations, making them clearly overbroad. (Opp'n at PageID 1580.) And request 46, despite containing some subject matter limitation, is still overly broad because it does not limit production to a relevant time period, or identify another party to the communication. (*Id.*) Once again, Plaintiff does not directly respond to Calyx's arguments about the lack of temporal or subject matter limitations. Instead, Plaintiff says:

> Stephen Hess-Morrone was a sales consultant providing services to Calyx during Tatum's contract period. These communications will demonstrate Tatum's sales efforts on behalf of Calyx. Moreover, if the communications occurred while Tatum was still employed by Grove Bags, the communications would be even more relevant. Accordingly, Calyx has no basis for refusing to produce these documents.

(Reply at PageID 1633–34.)

After reviewing the requests and the parties' arguments, the court overrules Calyx's objections to requests 44 and 45, but sustains its objection to request 46. The court is sympathetic

to Calyx's argument that the request's lack of a specific timeframe could result in the production of irrelevant documents. However, consistent with the court's decision on request 48, which dealt with communications between Tatum and Peter Anderson, Requests 44 and 45 could unearth communications relevant to Plaintiff's claims that Calyx tortiously interfered in Tatum's contract with Grove Bags, and misappropriated Grove Bags' trade secrets through interactions with Tatum during or after his Grove Bags tenure. The same reasoning would apply to Cultivated, Tatum's consulting company that contracted with Calyx.

Request 46 is overly broad though, because, while the communications must refer, reflect, or relate to Grove Bags, the request could easily generate documents disconnected from Plaintiff's claims. Furthermore, Plaintiff's argument in response to Calyx's Opposition focuses on Tatum's communications with Hess-Morrone, thereby demonstrating the relevance of requests 44 and 45, but not 46. Accordingly, the court overrules Calyx's objections to requests 44 and 45, and sustains its objections to request 46.

In conclusion, the court sustains Calyx's objections to requests 14–17, 19, 22, 36, 39, 40, and 46, and overrules Calyx's objections to requests 44 and 45.

## C. Attorneys' Fees

Plaintiff also moves for attorneys' fees and reasonable expenses incurred in making the motion pursuant to Federal Rule of Civil Procedure 37(a)(5)(A). Plaintiff argues it is entitled to this relief "[b]ecause Plaintiff should not even have to file this Motion." (Mot. at PageID 1455.) Calyx Counters, arguing that sanctions are not warranted because its objections were "substantially justified." (Opp'n at PageID 1581.) In response, Grove Bags asserts Calyx's objections are not "substantially justified" because they are boilerplate, and Calyx has acted unreasonably in not

-21-

responding to the requested discovery. (Reply at PageID 1635.)

A court considers Rule 37(a)(5)(A) only if the motion to compel was granted or disclosure or discovery is provided after filing. Under the rule, a court *must*, "after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless an enumerated exception applies. Fed. R. Civ. P. 37(a)(5)(A).

However, when a court grants in part and denies in part a motion, as is the case here, then Rule 37(a)(5)(C) applies. Rule 37(a)(5)(C) reads, "[i]f the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Unlike Rule 37(a)(5)(A), which requires the court to order payment of the movant's reasonable expenses and attorney's fees unless an exception applies, subsection (C) is permissive— "the court *may*...apportion reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). Moreover, the award of discovery sanctions is a matter within the court's sound discretion, and an abuse of discretion exists only if the court's decision is based on "1) an erroneous conclusion of law, 2) findings that are clearly erroneous, or 3) is itself a clearly unreasonable, arbitrary, or fanciful decision." *State Farm Mut. Auto. Ins. Co. v. Hawkins*, No. 08-CV-10367-DT, 2008 WL 5383855, at 4 (E.D. Mich. Dec. 23, 2008) (citing *Youn v. Track, Inc.*, 324 F.3d 409, 420 (6th Cir. 2003)); *Stough v. Mayville Cmty Sch.*, 138 F.3d 612, 614 (6th Cir. 1998).

On this Motion, the court declines to exercise its discretion under Rule 37(a)(5)(C). As evidenced by the court's earlier decision to sustain a number of Calyx's objections, Calyx's

objections are "substantially justified," in that they "raise[] [] issue[s] about which there is a genuine dispute, [and] [] reasonable people could differ as to the appropriateness of the contested action[s]." *NPF Franchising, LLC v. SY Dawgs, LLC*, 37 F.4th 369, 381 (6th Cir. 2022) (citing *Doe v. Lexington-Fayette Urb. Cnty. Gov't*, 407 F.3d 755, 766 (6th Cir. 2005)). Furthermore, many of Plaintiff's arguments for why the court should compel Calyx to respond provide conclusions, ie. "The three interrogatories are plainly relevant to this lawsuit," (Mot. at PageID 1459), without explaining why or which cause of action the request pertains to. Nevertheless, the court did overrule some of Calyx's objections, making a number of Plaintiff's requests worthy of response.

Accordingly, the parties will bear their own expenses and attorneys' fees in filing and responding to the instant Motion to Compel.

## IV. CONCLUSION

For the foregoing reasons, the court grants in part, and denies in part, Plaintiff's Motion to Compel against Defendant Calyx Containers, LLC (ECF No. 64), and denies Plaintiff's request for reasonable expenses and attorneys' fees pursuant to Federal Rule of Civil Procedure 37(a)(5)(A). The court hereby orders Calyx to respond to the following discovery requests: Interrogatories 11 and 13; Document Requests 37, 38, 44, 45, and 48.

IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

February 5, 2026

-23-