UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KINZIE ADVANCED POLYMERS, LLC d/b/a GROVE BAGS, | ) | Case No. 1:24 CV 1887 |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| v. | ) | |
| CALYX CONTAINERS, LLC *et al.*, | ) | |
| Defendants | ) | <u>ORDER</u> |

Currently pending before the court in the above-captioned case is Plaintiff Kinzie Advanced Polymers, LLC d/b/a Grove Bags' Motion for Sanctions for Failure to Preserve Electronically Stored Information Against Defendants ("Motion") (ECF No. 65). For the following reasons, the court grants in part and denies in part the Motion.

## I. BACKGROUND

The history of this case is well-documented in previous Orders issued by this court. (*See* Prelim. Inj. Order, ECF No. 56; Order on Mot. to Dismiss, ECF No. 61; Order on Mot. to Compel, ECF No. 94.) The instant Motion for Sanctions concerns an iPhone that Plaintiff Kinzie Advanced Polymers, LLC d/b/a Grove Bags ("Grove Bags" or "Plaintiff") purchased for Defendant Michael Ryan Tatum ("Tatum") in 2022, and which Tatum replaced on July 9, 2025, after it became "the victim of a hard fall," and stopped working properly. (Campbell Decl. ¶ 16,

ECF No. 65-2; Tatum Decl. ¶ 13, ECF No. 69-1.) The facts relevant to the instant ESI dispute are as follows.

Tatum began consulting for Grove Bags in September 2020 and then worked full-time as a Grove Bags employee from October 7, 2020, to August 25, 2023. (*See* Prelim. Inj. Order at PageID 1298–99.) At some point during his employment, Grove Bags purchased an iPhone for Tatum; however, the parties dispute why the purchase was made, and whether the iPhone was a gift for Tatum to keep beyond his work for Grove Bags, or Grove Bags' property that Tatum should have returned after his employment ended. (*Compare* Jaffe Decl. ¶¶ 7–8, ECF No. 65-3 *with* Tatum Decl. ¶¶ 3–6.) Either way, Tatum used the iPhone regularly while working for Grove Bags and the phone was always associated with his personal cell phone plan, not a Grove Bags plan. (Tatum Decl. ¶ 5; Tatum Ex. E at PageID 1623.)

One of the applications Tatum regularly used on his iPhone for Grove Bags business was RingCentral. (Tatum Decl. ¶ 7; Jaffe Decl. ¶ 13.) The parties dispute whether Tatum directed Grove Bags' use of RingCentral or whether Grove Bags required Tatum to install and use the app. (*Compare* Jaffe Decl. ¶ 13 and Zwick Decl. ¶¶ 4–5 *with* Tatum Decl. ¶ 7.) Even so, the parties appear to agree that RingCentral connected to Grove Bags' customer relationship management ("CRM") system, Salesforce, thereby allowing Grove Bags employees to contact customers or prospective through the app. (Zwick Decl. ¶¶ 7–8; Tatum Decl. ¶ 7.)

On August 24, 2023, Tatum's employment with Grove Bags ended. (Prelim. Inj. Order at PageID 1299; Tatum Decl. ¶ 9; Jaffe Decl. ¶ 8.) The following day, Tatum signed a Severance Agreement, which included provisions requiring Tatum to continue compliance with the confidentiality clause and restrictive covenants included in his prior Employment Agreements.

(Prelim. Inj. Order at PageID 1300.) The Severance Agreement also required Tatum to return Grove Bags' property. (Pl. Prelim. Inj. Ex. 5 at § 9.) Tatum declares he returned his Grove Bags-issued laptop and mouse the day his employment ended. (Tatum Decl. ¶ 9.) He also declares that Grove Bags disabled his access to company systems (email, Google Workspace, Salesforce, RingCentral) that day too. (*Id.*) Tatum did not turn in the disputed iPhone, and he declares that at the time of his termination:

> No one asked for my personal phone during or after the termination meeting. Grove Bags did not claim at that time that my phone was company property. Until the discovery process in this litigation began, Grove Bags never asked about my cell phone.

(*Id.* ¶ 10.) Grove Bags on the other hand states that "Tatum neither returned the phone nor contacted Grove bags to verify the return or the deletion of Grove Bags client and company information on the phone." (Jaffe Decl. ¶ 8.)

After leaving Grove Bags, Tatum returned to consulting through his Colorado-based LLC, Cultivated Synergy Strategies, Ltd. (Prelim. Inj. Order at PageID 1300.) In late August 2024, Tatum signed a consulting agreement with Calyx Containers, LLC. (*Id.* at PageID 1301.) During his time working for Calyx, Tatum used the same iPhone he had received while employed by Grove Bags. (Suppl. to Mot. Ex. 2 at PageID 2172.)

On October 29, 2024, Plaintiff filed a seven-count Complaint (ECF No. 1) against Tatum and Calyx. In it, Plaintiff alleged Breach of Contract - Employment Agreement (Count I) and Breach of Contract - Severance Agreement (Count II) against Defendant Michael Ryan Tatum, as well as Misappropriation of Trade Secrets (Count III), Tortious Interference with Economic and/or Business Relations (Count IV), Civil Conspiracy (Count VI), and Injunctive Relief (Count VII). Plaintiff later filed an Amended Complaint pursuant to Federal Rule of Civil Procedure

15(a)(1)(B) (ECF No. 9) on January 10, 2025, asserting the same seven counts, and adding one for Deceptive Trade Practices against both Defendants. (Am. Compl. at PageID 274.)

Prior to filing the Amended Complaint, Plaintiff moved for a preliminary injunction on December 24, 2024 (ECF No. 5). The court held a Preliminary Injunction Hearing on May 22, 27, and 28, 2025 (ECF Nos. 33, 35), at which time witnesses for Plaintiff and Defendants testified about Tatum's iPhone, how he got it, and his use of the RingCentral app. (Mot. at PageID 1543) (citing Knobel Hrg. Test. at 327–28 and 383; Jaffe Hrg. Test. at 399 and 403). After the Hearing, Plaintiff's counsel asked Tatum's counsel to provide Tatum's phone for a forensics review. (Mot. at PageID 1544; Campbell Decl. ¶ 10.) According to Plaintiff's counsel, Tatum's counsel did not object to the request, and in fact emailed Plaintiff's counsel on July 1, 2025, saying: "I presume you will propose a protocol on collecting the contents of his phone and use an independent third-party to protect his personal and unrelated data." (*Id.* ¶ 14.) However, before a protocol was established and the iPhone was produced, Tatum replaced it.

Tatum declares that in late June/early July 2025, the iPhone became "the victim of a hard fall," such that "it would lock and freeze up, and the camera did not function properly." (Tatum Decl. ¶ 13.) Tatum took the phone to an Apple Store in Denver, where he was told that the phone's hardware was likely damaged and needed replacement. (*Id.*) Accordingly, Tatum traded in the iPhone and activated a replacement on the same personal phone plan he had been using. (*Id.*) Tatum declares that "[m]y contacts, messages, and photos were restored from my personal Google/iCloud backups to the new phone[,]" and that "I am not aware of any data lost in the transfer." (*Id.* ¶ 14.)

Tatum did not inform Plaintiff of the phone replacement at the time it occurred. Instead, Plaintiff learned of it on September 22, 2025, when Tatum's counsel advised: "Tatum no longer possesses or has control of the iPhone which was given to him as a gift by Jack Grover during his employment by Plaintiff." (Campbell Decl. ¶ 15.) Ultimately, Tatum's counsel told Plaintiff that Tatum "surrendered the phone on July 9, 2025." (*Id.* ¶ 16.)

On October 13 and 15, 2025, approximately two weeks before filing the Motion for Sanctions considered herein, Plaintiff's counsel met and conferred with Tatum's counsel about the iPhone issue. (Mot. at PageID 1539.) Tatum declares that on October 13, 2025, Plaintiff's counsel emailed that Tatum's phone "had over 2,000 contacts on it—Grove Bags' 2023 customer list[.]" (Tatum Decl. ¶ 16.) Tatum states that Plaintiff's assertion regarding the customer contact list is "not true." (*Id.*) In response to Plaintiff's email, Tatum declares he provided his counsel with a screenshot showing his current personal contact count (1,741 Google contacts), thereby "demonstrating [his] entire personal Gmail contacts book was smaller than the claimed '2,000 Grove Bags customers.'" (*Id.* ¶ 17.)

Plaintiff filed the instant Motion for Sanctions on October 17, 2025. Tatum filed his Opposition (ECF No. 69) on October 31, 2025, Calyx filed its Opposition on November 7, 2025 (ECF No. 74), and Plaintiff filed its Reply (ECF No. 75) on November 14, 2025. Then, on February 2, 2026, Plaintiff filed a Supplement to its Motion for Sanctions (ECF No. 90), to which Tatum Responded (ECF No. 91) on February 2, 2026, and Calyx Responded (ECF No. 93) on February 3, 2026.

On September 10, 2026, the court held a status conference with counsel for the parties, and representatives for the parties. (Order, ECF No. 139.) During the conference, the court heard

arguments from counsel regarding the Motion for Sanctions and the alleged ESI purportedly destroyed by Tatum when he replaced his iPhone. The court inquired whether Plaintiff would consider the discovery protocol for Tatum's new iPhone proposed by Tatum's counsel in a January 6, 2026 email. (*See* Tatum Resp. to Pl.'s Suppl. to Mot. at PageID 2184–85, ECF No. 91-1.) No agreement was reached, and so the court took the Motion under advisement.

## II. LEGAL STANDARD

A federal district court may impose sanctions for spoliation when a party destroys evidence in anticipation of litigation. *See Applebaum v. Target Corp.*, 831 F.3d 740, 744 (6th Cir. 2016). To determine whether sanctions for ESI spoliation are warranted, courts apply Federal Rule of Civil Procedure 37(e). *See Henry v. Mihm*, 827 F. Supp. 3d 1002, 1007 (E.D. Mich. 2026). Under Rule 37(e), the party seeking sanctions must first show: "(1) electronically stored information that should have been preserved in the anticipation or conduct of litigation was lost; (2) the party who had a duty to preserve the information failed to take reasonable steps to preserve it; and (3) the information cannot be restored or replaced through additional discovery." *Adamczyk v. Sch. Dist. of City of Hamtramck Pub. Schs.*, 667 F. Supp. 3d 534, 556 (E.D. Mich. 2023) (internal quotations omitted) (quoting *Prudential Def. Sols., Inc. v. Graham*, No. 20-11785, 2021 WL 4810498, at *5 (E.D. Mich. Oct. 15, 2021)); FED. R. CIV. P. 37(e).

If the moving party satisfies this three-part showing, then the court decides whether there is "prejudice to another party from loss of the information," FED. R. CIV. P. 37(e)(1), or that the nonmoving party "acted with the intent to deprive another party of the information's use in the litigation." FED. R. CIV. P. 37(e)(2). If the court makes a finding of prejudice, then it "may order measures no greater than necessary to cure the prejudice." FED. R. CIV. P. 37(e)(1). If the court

finds the party acted with intent to deprive, then it may "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." FED. R. CIV. P. 37(e)(2)(A)–(C). In crafting sanctions for spoliation, the court has broad discretion. *Adamczyk*, 667 F. Supp. 3d at 556.

## III. DISCUSSION

### A. Are Rule 37(e) Sanctions Warranted?

Plaintiff argues that Tatum's iPhone should have been preserved in anticipation of litigation or conduct of litigation because Plaintiff's breach of contract and misappropriation of trade secrets claims placed the iPhone at issue. (Mot. at PageID 1542.) Further, Plaintiff states that the iPhone was lost because Tatum surrendered it when he replaced it with a new iPhone in July 2025. (*Id.* at 1544.) Plaintiff also maintains that Tatum and Calyx failed to take reasonable steps to preserve the iPhone, especially since both are represented by sophisticated counsel, and Tatum had agreed to preserve the iPhone at the conclusion of the Preliminary Injunction Hearing. (*Id.* at 1548.) Lastly, Plaintiff contends that the information contained on Tatum's iPhone cannot be replaced or restored through additional discovery because "the loss of the phone limits [Plaintiff's] expert's ability to determine what information was on the phone and whether Tatum deleted any information." (*Id.*) The court addresses each of the preliminary requirements to imposing Rule 37(e) sanctions in turn.

#### *1. Preservation of the iPhone*

Plaintiff contends that the filing of its lawsuit alleging breach of contract and misappropriation of trade secrets on October 29, 2024, placed Tatum and Calyx on notice of the

duty to preserve the iPhone. (Mot. at PageID 1546.) At latest, Plaintiff continues, Defendants had notice of their duty to preserve at the Injunction Hearing held between May 22, 2025 and May 28, 2025, during which the parties testified about the iPhone, and Tatum's counsel agreed to Plaintiff's request to submit the iPhone to an expert review. (*Id.* at PageID 1547.) Plaintiff additionally argues that Calyx "had the right and authority to preserve Tatum's phone" because as Tatum's employer, it is responsible for Tatum's actions occurring within the scope of his employment. (*Id.*)

Tatum does not directly assert that he was not under a duty to preserve the iPhone, nor notified of such a duty by the filing of the Complaint or the Injunction Hearing. Rather, Tatum maintains that it was his personal cell phone, not Grove Bags' property, and any of the information Grove Bags claimed Tatum had on the cell phone was already within Grove Bags'-controlled systems. (Tatum Opp'n at PageID 1593.) Thus, Tatum contends he had a "good-faith belief that replacing a failed personal device did not affect Grove Bags access to its records." (*Id.*) (citing Tatum Decl. at ¶ 15.) As to Calyx, it argues that it "never had possession of Tatum's personal cell phone, and had no right, authority, or practical ability to obtain or access Tatum's personal cell phone or the ESI contained on the device." (Calyx Opp'n at PageID 1670.) Additionally, Calyx challenges Plaintiff's argument as to its duty to preserve the iPhone by explaining that had it reviewed or obtained the customer information allegedly on the iPhone, "Grove Bags would surely allege that Calyx had misappropriated Grove Bags' trade secret[.]" (*Id.* at PageID 1671.) Plaintiff contests Calyx's position, and reasserts that Calyx's relationship with Tatum, and Tatum's use of the iPhone while working for Calyx, means Calyx had control and a right to obtain information on the iPhone. (Reply at PageID 1685–86.)

The duty to preserve ESI in anticipation of litigation or conduct of litigation stems from the common-law duty to preserve. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. The Sixth Circuit has explained that "it is beyond question that a party to civil litigation has a duty to preserve relevant information, including ESI, when that party 'has notice that the evidence is relevant to litigation or...should have known that the evidence may be relevant to future litigation.'" *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)). A party can be placed on notice of its duty to preserve through "demand letters, hold notices, preservation requests, litigation threats, or a party's own decision to pursue a claim." *Buddenberg*, 711 F.Supp.3d 712, 818 (N.D. Ohio 2024) (citation omitted).

As to Tatum, the court concludes that he had a duty to preserve the iPhone in anticipation of litigation or conduct of litigation, and that Tatum was on notice of that duty when the Complaint was filed on October 29, 2024. There is no dispute that Tatum used the iPhone for business purposes while working for Grove Bags and then Calyx. As such, the iPhone contains some amount of ESI relevant to Plaintiff's breach of contract and misappropriation of trade secrets claims.

Calyx's duty to preserve is a trickier issue. There is a split among federal courts about "what circumstances render an employee's personal device subject to the 'possession, custody, and control' of its employer[.]" *Cap. Senior Living, Inc. v. Barnhiser*, 713 F. Supp. 3d 407, 414 (N.D. Ohio 2024) (internal quotation omitted) (quoting *Union Home Mortg. Corp. v. Jenkins*, No. 1:20CV2690, 2021 WL 1110440, at *28 (N.D. Ohio Mar. 23, 2021)). Generally, though, "the plaintiff must show that personal devices were used for business purposes." *Id.* Additionally,

courts in this Circuit have found that "neither physical possession nor legal ownership of the documents is required" for a party to be in control." *Id.* (internal quotations omitted) (quoting *Libertarian Party of Ohio v. Husted*, No. 2:13-CV-953, 2014 WL 3928293, at *1 (S.D. Ohio Aug. 12, 2014)). Ultimately, for spoliation motions, "courts deem evidence to be 'under a party's control when that party has the right, authority, or practical ability to obtain the evidence." *Barnhiser*, 713 F.Supp.3d at 414 (cleaned up).

In *Barnhiser*, the plaintiff company moved for spoliation sanctions against the defendants, plaintiff's former employee and the former employee's current employer. *Id.* at 411. The plaintiff argued that its former employee had destroyed tens of thousands of relevant text messages after being instructed to preserve potential evidence, and that the employee's current employer knew the employee was obligated to preserve evidence but failed to take steps to ensure compliance. *Id.* The *Barnhiser* court agreed that the employee and her current employer had control over and a mutual duty to preserve the employee's work-related text messages on her personal phone. *Id.* at 416. As to the employer, *Barnhiser* found the employer's indication to the plaintiff that "its employees would honor their non-solicitation agreements," evidenced its control over the employee's communications. *Id.* at 415. Furthermore, the employee's testimony that the employer had instructed her to preserve her communications in the ordinary course demonstrated the employer's control. *Id.*

Here, like the *Barnhiser* employee, Tatum used the iPhone for work purposes while employed by Plaintiff and then while consulting for Calyx. (Tatum Decl. ¶ 7; Tatum Ex. E at PageID 1623–24; Jaffe Decl. ¶ 7.) Additionally, like the *Barnhiser* parties, the parties here exchanged communications regarding Calyx's respect for any contracts between Tatum and

Plaintiff. Specifically, on August 13, 2024, Grove Bag's CEO Jack Grover wrote the following via email to Alex Gonzalez, President of Calyx:

> Alex, [a]s I mentioned on our last call, I am reminding you to please respect all NDAs, non-competes, non-disclosures and all other applicable contracts that we have with customers, suppliers, employees, ex employees and other members of our ecosystem. This as you know also includes and applies to current and former officers in the organization as well specifically including Ryan Tatum. Please be aware that knowingly interfering with these contracts will have to result in an escalation that would be an unpleasant and unproductive distraction for both of us.

(Pl. Prelim. Inj. Ex. 6; Hrg. Tr. at PageID 933–37.) Approximately two weeks later, on August 26 and 27, 2024, Gonzalez and Tatum exchanged the following emails:

> Ryan, [a]s I mentioned on our call, I am reminding you to please respect all NDAs, non-competes, non-disclosures and all other applicable contracts that you have with former employers, customers, suppliers, employees, etc.
>
> Hi Alex, [t]hank you for the reminder. As discussed, I fully understand the importance of respecting all NDAs, non-competes, and other applicable agreements with current or former clients, employers, customers, suppliers, and employees. Please rest assured that I will strictly adhere to these obligations and always maintain the confidentiality of all involved parties.

(Calyx Prelim. Inj. Ex. 10.) (*See also* Hrg. Tr. at PageID 1181, ECF No. 51) (Knobel Test. "We sent him an e-mail clarifying our stance that we respect everyone's confidential information."). While these communications are not litigation hold letters like in *Barnhiser*, they similarly evince Calyx's control over Tatum's actions. If Calyx had no control over Tatum's actions and communication, then Calyx reminding Tatum to respect his prior noncompete, nondisclosure, and other agreements with former employers would be "illogical." *Barnhiser*, 713 F.Supp.3d at

415 ("If Meridian did not have any control over Barnhiser's actions and communications, it would have been illogical for Meridian to assure Capital Senior of Barnhiser's compliance.").

Accordingly, the court finds that, as related to the instant spoliation motion, Calyx and Tatum had control of the iPhone as well as a duty to preserve it.

*2. Reasonable Steps to Preserve*

Next, Plaintiff must demonstrate that the iPhone was lost because Defendants failed to take reasonable steps to preserve it. FED. R. CIV. P. 37(e). Courts consider numerous factors when determining whether a party took reasonable steps to preserve the ESI: 1) the existence of a "routine, good-faith operation of an electronic information system[;]" 2) a litigant's familiarity with the preservation obligations accompanying litigation; 3) "the extent to which a party knew of and protected against" events outside the party's control; and 4) the proportionality of a party's preservation efforts. *See* FED. R. CIV. P. 37(e) advisory committee's note to 2015 amendment; *Buddenberg*, 711 F.Supp.3d at 819.

Plaintiff maintains that Defendants failed to take reasonable steps to preserve the iPhone, especially since both are represented by counsel, Plaintiff requested the iPhone for forensic testing at the Preliminary Injunction Hearing, and Taum's counsel agreed to preserve the phone. (Mot. at PageID 1548; Reply at PageID 1687.) Tatum contends he took reasonable steps to preserve the iPhone by transferring all data from the failed iPhone to his new phone. (Tatum Opp'n at PageID 1590.) Calyx refers to Tatum's declaration regarding efforts to preserve the ESI stored on the phone, and states that Tatum did not inform Calyx that he had any issues with his phone, nor that he planned to replace it. (Calyx Opp'n at PageID 1665.) Calyx also argues, without supporting legal authority, that "[t]he loss of the iPhone device does not fall within the

scope of Rule 37(e)" because the iPhone device "is not itself ESI." (Calyx Opp'n at PageID 1663.) Defendants' arguments are not well-taken.

Multiple courts in this Circuit have imposed spoliation sanctions for discarded cell phones. For example, in *Schnatter v. 247 Group, LLC*, No. 320CV00003BJBCHL, 2022 WL 2402658 (W.D. Ky. Mar. 14, 2022), the court concluded that the plaintiff failed to take reasonable steps to preserve potentially relevant ESI stored on three cellphones that the plaintiff discarded. *Id.* at *10. The court explained that the plaintiff's decision not to maintain possession and control of the cellphones "was particularly unreasonable given that Cellphones B and C had been identified by his counsel as sources of potentially relevant ESI." *Id.* Similarly, in *HLV, LLC v. Page & Stewart*, No. 1:13-CV-1366, 2018 WL 2197730 (W.D. Mich. Mar. 2, 2018), the court concluded that defendant's disposal of his phone was unreasonable given a declaration in the litigation hold letter specifying his obligations to preserve his cell phone. *Id.* at 3. *See also Best Value Auto Parts Distr., Inc. v. Quality Collision Parts, Inc.*, No. 19-12291, 2021 WL 2201170, at *1–2 (E.D. Mich. May 31, 2021) (finding party did not take reasonable steps to preserve data on previous iPhone that party replaced because it no longer functioned properly).

Here, the court acknowledges that Tatum took some reasonable steps to preserve the iPhone's data by transferring it to the new phone when he traded in the iPhone. However, his decision to discard the iPhone shortly after the Preliminary Injunction Hearing where the iPhone was discussed, and after agreeing to have the iPhone reviewed by Plaintiff's forensic expert once an agreeable protocol was in place was unreasonable. Tatum's declaration that the person who examined the iPhone at the Apple Store told him that "the hardware was likely damaged and

needed replacement," does not make Tatum's decision to discard the iPhone any less unreasonable.[1]

The court finds that Calyx also failed to take reasonable steps to preserve the iPhone. First, like Tatum, Calyx knew that there were issues involving the iPhone following testimony at the Preliminary Injunction Hearing. Second, Calyx employed Tatum as a consultant until the Injunction Order issued on August 25, 2025. Thus, for the purposes of this spoliation motion, Calyx had control of the iPhone and should have talked with Tatum about preserving it.

Therefore, the court finds that Defendants did not take reasonable steps to preserve the iPhone.

*3. Replaceability*

The final threshold question as to whether Rule 37(e) sanctions should be imposed is if the lost ESI can be restored or replaced through additional discovery. Plaintiff contends the lost information cannot be restored because "the loss of the phone limits the expert's ability to determine what information was on the phone and whether Tatum deleted any information." (Mot. at PageID 1548.) Tatum disagrees and asserts that the information "is restorable or replaceable from Grove Bags' own enterprise systems (e.g., Salesforce export/API logs, RingCentral sync settings and logs, Google Workspace admin logs)[.]" (Tatum Opp'n at PageID 1594.) Tatum also reiterates that the information on his old iPhone was successfully transferred to the new iPhone. (*Id.* at PageID 1593.) Calyx echoes Tatum's arguments and maintains that the

---

1 The court also finds concerning that Tatum's counsel did not advise Plaintiff of the disposed iPhone until September 22, 2025, more than two months after Tatum surrendered it to the Apple store. (*See* Campbell Decl. ¶¶ 15–16.) Nor does the record contain an explanation from Tatum as to why that information was not shared earlier, especially since he knew the iPhone might be relevant given the parties' testimony at the Preliminary Injunction Hearing.

ESI "remains discoverable via at least two alternative sources, namely the new iPhone and the Apple iCloud." (Calyx Opp'n at PageID 1668.)

Central to the parties' dispute about the iPhone and its associated data replaceability is whether the information Plaintiff claims the iPhone contained ever existed on the iPhone. Plaintiff explains that it sought to review the iPhone to determine two issues: "(1) Does the phone contain Grove Bags' confidential information, including Grove Bags' customer list; and (2) review the phone to determine if the Grove Bags' confidential information was forwarded to Calyx and/or was Tatum directly soliciting Grove Bags' customers with the use of Grove Bags' confidential information." (*Id.* at PageID 1547–48) (internal citations omitted). Plaintiff asserts information like its customer list was on Tatum's discarded iPhone because Tatum used an app called RingCentral that had the ability to sync Plaintiff's customer contacts with an individual's personal contacts. (Mot. at PageID 1541.) As Noah Zwick, a current Grove Bags employee who worked under Tatum explains:

> ¶ 9 The contacts aspect of RingCentral was controlled by the app's "Sync Contacts" or "Save to Phone Contacts" setting. The sync is the default unless the employee opted out of the sync.
>
> ¶ 10 When the RingCentral application was taken off the employee's phone, the customer contacts remained in the phone.
>
> ¶ 11 For example, on my phone, I have 4,701 total contacts. 2,917 of the contacts are stored in my "Gmail contact list." Based on my review, it appears the bulk of the Gmail contact list was added through the Salesforce sync with RingCentral. I further reviewed my contacts on my phone for purposes of this declaration, and I concluded that I appear to have the Grove Bags customer/prospect list on my phone due to the sync.

> ¶ 12 I can confirm that the Ring Central application added Grove Bags customer and client information to my phone's contacts, subsequently the "Gmail contact list," and ultimately "All contacts list."
>
> ¶ 13 The contact records synced to my phone from the Grove Bags' RingCentral/Salesforce system contained standard data fields, including contact name, customer name, cell phone number, email, and business address. To the best of my knowledge, this synchronization process was exhaustive and enabled by default. As a result, the contact list on my device included what I believe to be every customer and prospective customer contained within the Salesforce system at that time.

(Zwick Decl. ¶¶ 9–13.)

Conversely, Tatum declares:

> ¶ 7 Grove Bags required me to install RingCentral (a softphone) that provided access to Salesforce data while I was logged into my Grove-managed accounts through our company-provided and controlled work emails. I could access Grove Bags' RingCentral and Salesforce only while logged into my Grove Bags-managed accounts. When logged out, I had no access to the Grove Bags software or systems. I did not enable any setting designed to sync or copy Grove Bags' entire CRM into my personal contacts.
>
> ¶ 8 During my employment, company software systems had to be set up and used with company-provided Grove Bags employee emails (not personal), which were hosted with Grove Bags' Google Workspace (formerly G suite). Grove Bags at all times controlled employee email accounts, their access, the company software, and the associated data.
>
> ¶ 9 On August 24, 2023, Grove Bags terminated my employment during a meeting with Mr. Grover, CFO Dan Jaffe, and counsel Tim Chai. I returned my Grove-issued laptop and mouse at that time. Grove Bags disabled my access to company systems (email, Google Workspace, Salesforce, RingCentral), the same day.

> ¶ 12 Consistent with those texts from August 24, 2023, at 11:54 AM ET with Dan Jaffe, once I logged out of RingCentral and other company controlled systems, I had no access on my phone (or anywhere) to Grove Bags information.

(Tatum Decl. ¶¶ 7–9, 12; Exs. A–C.)

These competing declarations make it difficult to conclude that the information Plaintiff sought to discover by examining the iPhone is replaceable. Undoubtedly, "determining the contents of a lost cell phone is an exceptionally difficult task." *Page & Stewart*, 2018 WL 2197730, at *3. In *Page & Stewart*, the defendant argued similar to Tatum and Calyx that the ESI on the discarded cell phone was discoverable from other sources to which the plaintiff purportedly had access. *Id. Page & Stewart* rejected that argument, finding that the defendant's disposal of the phone "deprived Plaintiffs of not just texts, but any other electronic record on the phone like draft texts or emails, call logs, and calendar entries." *Id.* at *4. As such, the court concluded that the plaintiffs experienced some measure of prejudice, despite securing some of the relevant ESI from other sources. *Id.* The court here likewise finds that the disposal of the iPhone deprived Grove Bags of any other electronic record on the phone, such as information deletions.

Accordingly, Plaintiff has demonstrated that, at least in part, the iPhone is irreplaceable. Therefore, the court finds that Plaintiff has made the threshold showing to warrant sanctions under Rule 37(e).

**B. What Sanctions Should the Court Impose?**

Plaintiff argues that Defendants' failure to preserve the cell phone prejudiced Grove Bags and further contends that Defendants acted with the intent to deprive Grove Bags of use of the cell phone in this litigation. (Mot. at PageID 1549–50.) As a result, Plaintiff seeks the most severe

sanctions allowed under Rule 37(e)(2), as well as Plaintiff's fees and costs for investigating the discovery issue and filing the Motion. (*Id.* at PageID 1551.) Defendants assert that Plaintiff's proposed sanctions are extreme and disproportionate, especially since Tatum has agreed to engage in setting up a neutral protocol to allow Grove Bags to examine the new iPhone for the information Plaintiff claims Tatum has. (Tatum Opp'n at PageID 1597–98; Calyx Opp'n at PageID 1672.)

A court evaluates "the lost information's importance in the litigation" to determine prejudice. *Buddenberg*, 711 F.Supp.3d at 821 (internal quotations omitted) (quoting *Courser v. Michigan House of Representatives*, 831 F. App'x 161, 187–88 (6th Cir. 2020)). In the spoliation context, prejudice may be shown with "plausible, concrete suggestions as to what the destroyed evidence might have been." *Id.* (cleaned up).

Here, Plaintiff asserts that its "investigation has revealed that Tatum had Grove Bags' entire customer list on his phone when he left Grove Bags." (Mot. at PageID 1549) (citing Zwick Decl. ¶ 11.) Plaintiff also contends that the iPhone was Grove Bags' property that Tatum had a duty to return to Plaintiff under the severance agreement. (*Id.*) Defendants argue that the Zwick declaration does not show that Tatum had the entire customer list on the iPhone when he left Grove Bags, and they maintain that the iPhone was a gift to Tatum, not Grove Bags property. (Tatum Opp'n at PageID 1597; Calyx Opp'n at PageID 1666–67.)

With regard to the iPhone being Plaintiff's property and not Tatum's, that is a question of fact that the court cannot resolve on this record. As to the customer list being on the iPhone following Tatum's departure, the court finds that the Zwick Declaration raises a "plausible, concrete suggestion" that the iPhone might have contained Plaintiff's customer list. However,

Tatum's competing declaration prevents the court from finding, as Plaintiff argues, that the customer list *was* on the iPhone.

There is no dispute that the customer list is important to the litigation, as it is one of the purported trade secrets Defendants allegedly misappropriated. Further, it is relevant to Plaintiff's breach of contract claims against Tatum, as those agreements prohibited Tatum from using, disclosing, transferring, or exploiting confidential information, like Grove Bags' customer contact list. Accordingly, the court concludes that the loss of the iPhone prejudices Plaintiff.

Plaintiff does not prove, however, that Defendants had an intent to deprive Plaintiff of the iPhone. A party cannot prove intent to deprive by showing "negligence or even gross negligence." *Applebaum v. Target Corp.*, 831 F.3d 740, 745 (6th Cir. 2016) (citing Fed. R. Civ. P. 37, 2015 advisory committee note). In this case, the court's conclusion that some of the information from the iPhone may be restorable because of Tatum's data transfer, weighs against finding Defendants acted with an intent to deprive. Furthermore, Tatum's continued willingness to develop a protocol under which Plaintiff can review the new iPhone demonstrates that less severe sanctions than those available under Fed. R. Civ. P. 37(e)(2) are appropriate.

The court also acknowledges that Plaintiff's Supplemental Motion for Sanctions (ECF No. 90) relies on a selective reading of email exchanges and deposition testimony. For instance, Plaintiff claims that "Tatum has refused to provide access to his new iPhone," and attaches part of an email exchange with Tatum's counsel as support. (Suppl. Mot. at PageID 2164.) But Plaintiff's argument is undermined by the full email exchange. (*See* Tatum Resp. to Suppl. Mot. Ex. 1, ECF No. 91.) As the full email chain demonstrates, Tatum's counsel recommended a protocol for reviewing the new iPhone, as well as a breakdown of Tatum's Gmail Contacts. (*Id.*

at PageID 2184–85.) Plaintiff's decision to include only part of the email exchange in its Supplemental Motion frustrates the court's ability to fully weigh the evidence presented with the Motion for Sanctions.

Therefore, the court does not find that Plaintiff proved Defendants acted with an intent to deprive Grove Bags of the discarded iPhone. As such, the court will only "order measures no greater than necessary to cure the prejudice[.]" FED. R. CIV. P. 37(e)(1).

## IV. CONCLUSION

For the foregoing reasons the court grants in part and denies in part Plaintiff's Motion for Sanctions for Failure to Preserve Electronically Stored Information Against Defendants (ECF No. 65). To cure the prejudice to Plaintiff caused by Defendants' failure to take reasonable efforts to preserve the iPhone and the information irreplaceable by additional discovery, the court hereby orders:

1) Plaintiff shall be allowed to present evidence relating to the discussion of the iPhone during the Preliminary Injunction Hearing held May 22, 27, and 28, 2025, as well as Tatum's subsequent agreement to provide the iPhone for Plaintiff's forensic inspection, and Defendants' failure to preserve the iPhone in light of the Preliminary Injunction Hearing testimony and agreement. Plaintiff may argue for whatever inference it hopes the jury will draw. Defendants will also be permitted to present their own admissible evidence and argue that the jury should not draw an inference from their conduct.

2) Plaintiff and Tatum shall work with Magistrate Judge Grimes to develop and implement a protocol whereby Judge Grimes can compare Tatum's full contact

list on the new iPhone to Plaintiff's customer list as it existed the day Tatum separated from Grove Bags (August 24, 2023). This inspection shall occur *without* Plaintiff first producing evidence supporting an export/sync event involving Tatum.

(a) If Judge Grime's neutral inspection results in a list of contacts existing on Tatum's new iPhone and in Grove Bags' customer list:

(i) Plaintiff shall be permitted to conduct supplemental discovery to help determine when Tatum added the shared contact to his contact list and whether Tatum has communicated with the shared contact about Grove Bags, Calyx Containers, TerpLoc, or Calyx Cure since Tatum departed Grove Bags.

(ii) Tatum shall be permitted to compel production by Plaintiff of any export/sync events involving Tatum, including but not limited to, (1) Salesforce export/audit logs or reports; (2) RingCentral admin logs/settings relevant to contact syncing; (3) any MDM/SSO access logs; and (4) any internal IT tickets/reports regarding contact syncing or exports involving Tatum.

3) Defendants to pay Plaintiff's reasonable attorney fees and costs associated with filing this Motion, as well as Plaintiff's reasonable attorney fees and costs

associated with Magistrate Judge Grimes' neutral inspection of Tatum's and Grove Bags' contacts.

(a) Plaintiff's counsel shall submit billing records and corresponding declarations evidencing the time spent on the instant Motion and Judge Grimes' inspection within thirty (30) days of Judge Grimes completing the inspection.

(b) Defendants may respond to the amount requested by Plaintiff within thirty (30) days of Plaintiff's submission to the court. The response should only address the amount claimed by Plaintiff and the sufficiency of its itemization, not the results of Judge Grimes' inspection.

The matter is hereby referred to Magistrate Judge Grimes for the purposes set forth above in this Order.

IT IS SO ORDERED

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

September 30, 2026